CARROCCIO ᴇᴛ ᴜx. *v.* THORPE

[No. 144, September Term, 1962.]

*Decided January 29, 1963.*

*Petition for review in proper person filed by the appellants February 18, 1963, denied March 8, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*John Sumner Wood, Sr.,* for the appellants.

*William C. Miller,* with whom were *Miller & Miller* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The Circuit Court for Montgomery County, sitting without a jury, entered judgment against the defendants in an action at law, and they have appealed.

The appellants consume eleven pages in their brief under the heading of "Questions Presented." It is difficult to pinpoint their contentions. In their brief, reply brief and supplemental reply brief they assert as error everything from a "cut-short hearing" to "abuse of judicial discretion," and allege as reasons for reversing the judgment everything from fraud to "mistakes of fact," "constructive fraud, irregularities

and disqualification of the special auditor." The case may be determined by answering two questions: (1) Was the court clearly in error in sustaining the amended report of the special auditor?; and (2) Was the allowance of interest to the plaintiff a matter within the Court's discretion, under the circumstances of this case?

This is the third time the case has been before us. In its first appearance, *Carroccio v. Thorpe*, 222 Md. 38, 158 A. 2d 660, we reversed because summary judgment had been rendered in favor of the plaintiff when certain questions of fact, according to the record, were genuinely disputed. The facts, to the time of its rendition, are set forth in the opinion in that case. We shall, therefore, give a summary thereof without restating them in detail.

More than six years ago, the appellee, in a written contract, agreed to construct a dwelling for the appellants. On or about April 3, 1958, after the dwelling's construction, the appellee filed suit against the appellants claiming to be entitled to judgment by virtue of its construction, and for certain authorized changes and extras not included in the original contract price. Filed with the declaration was a motion for summary judgment. The appellants disputed appellee's claims, and asserted that they were entitled to "certain credits and damages" from the appellee. Counsel for the respective parties entered into a written stipulation, whereby Edward W. Nylen, a respected member of the Maryland Bar, would be appointed a special auditor "to examine the matters in controversy and to state an account between the parties." The stipulation provided that "either party aggrieved" by the account could file, within ten days, exceptions with "the court." Pursuant to the stipulation, the Circuit Court appointed Mr. Nylen as a special auditor to state the account. Nylen requested the respective parties to submit their claims in detail. This resulted in a total of 102 items. Nylen met with counsel for the respective parties on a number of occasions and discussed all the claimed credits of all parties, item by item. He viewed the premises on two separate occasions, and on the second, the parties to the suit and their respective counsel were present. On this second occasion, March 18, 1959, the special auditor,

Dr. Carroccio, Thorpe and their respective counsel went over the house in great detail and considered many of the items that were in controversy. The parties, in the presence of the special auditor, agreed as to whether each item considered should be allowed or disallowed or set forth in the account at all and the amounts to be credited to each item. Where no agreement could be reached upon an item, Nylen marked same as disputed. After this and other meetings of counsel with the special auditor, a complete settlement and agreement was reached as to all items in controversy except five. These five items could not be agreed upon as to amount and were left to the special auditor to determine. It was further agreed that there were no other items in the case to be considered. In the meetings between Nylen, counsel and the parties at which the various items were discussed, many items were exchanged or traded for other items. The amounts were adjusted according to the arguments advanced by counsel for both parties, and many items were split, traded, deleted and added in the spirit of compromise and in an effort to reach a settlement. At the point where the special auditor was to prepare his account, a complete settlement and compromise had been reached on 97 items and but five items remained in dispute. After considering various papers, documents and other evidence submitted by counsel on the five disputed items, Nylen prepared and filed an account in which he set forth all of the items agreed upon and the amounts agreed to and showed the total due the appellee by virtue of the settlement, and he also made a determination as to the five items on which no agreement could be reached and included in his report amounts due the appellee for these items. The appellants then filed exceptions to almost every item contained in the account, including those upon which they had previously agreed. Following additional pleadings, the trial court granted plaintiff a summary judgment without hearing the exceptions, and it was this judgment that we reversed as stated above. Pursuant to the mandate of this Court, hearings were held on appellants' exceptions. The court found that appellants' counsel had authority to bind his clients when he signed the stipulation; therefore the auditor's report, or account, was binding on the

parties. The court, also, re-referred the matter to Nylen for an additional hearing and report on the five disputed items. Appellants noted an appeal to this Court which was dismissed. *Carroccio v. Thorpe,* No. 116, September Term, 1961.

In February, 1962, Nylen held a hearing to take additional testimony in accordance with the previous opinion and order of the trial court. Counsel for the appellants and appellee were present and they advised the auditor they did not desire to offer further evidence. Thereafter, on March 30, 1962, the auditor filed an amended report, and the appellants promptly filed another voluminous list of exceptions. On June 8, 1962, the court held a hearing on the exceptions to the five items reconsidered on re-referral. Counsel for the appellants was present and advised the court that he did not intend to offer any additional evidence. On June 12, 1962, the court rendered judgment in favor of the appellee. This judgment was based upon the auditor's amended report, which consisted of an "agreed to by counsel" adjustment of 97 of the original disputed items and the auditor's allowances to the plaintiff on the five disputed claims, and four years' interest on the principal amount of the judgment. This appeal followed.

## I

In order to decide the first question, it becomes necessary to determine whether there was sufficient evidence to support the trial court's finding that the 97 items listed in the auditor's amended report as having been "mutually agreed to by counsel" had in fact been settled and compromised by the parties. Fifteen of the ninety-seven items were covered in Schedule A of the report, being items of extras credited to appellee; sixty-three of the items were covered in Schedule B of the report, being items credited to the defendants "for work and materials not performed or furnished, and for work improperly done," or items upon which counsel had agreed that no adjustment should be made to either side; and the remaining nineteen items were covered in Schedule C, and consisted of items of credit to the defendants for "work and materials either omitted or paid for by the defendants."

Appellants' contentions as to why the trial court was clearly

in error in upholding the auditor's amended report seem to be threefold: (a) that no settlement or compromise by the parties was, in fact, reached on the 97 items; (b) that even if there were such a settlement by counsel, the settlement was made by appellants' counsel without authority; and (c) even if there were an authorized settlement, it should be upset because of a disqualification of the special auditor.

(a) and (b) may be considered and answered together. The solution of both involves questions of fact. The testimony was taken in open court, and the trial court saw and heard the witnesses. The court found that Larcombe, defendants' counsel of record, had authority, "under all of the circumstances adduced at this hearing," to stipulate and to bind his clients; and, after hearing all the evidence, the court was convinced that the defendants "were merely dissatisfied with the findings of the special auditor," and were, therefore, attempting "to repudiate the entire arrangement."

We cannot say these findings of fact by the trial court were clearly erroneous. Maryland Rule 886 a. Although, in Maryland, an attorney has no implied authority *to compromise* his client's claim, there is a *prima facie* presumption that he has authority to bind his client by his actions relating to the conduct of litigation. *Posko v. Climatic Control Corp.*, 198 Md. 578, 84 A. 2d 906. The trial court in the case at bar held that this presumption had not only not been negated, but the evidence affirmatively showed that Larcombe had authority to bind his clients.

There was ample evidence to support the above findings of the court. The testimony disclosed that after the stipulation had been filed and the special auditor appointed, the parties, their respective counsel, the auditor, and a Mr. Hoxie, a civil engineer whom the defendants had requested to be present, met at the subject property (where defendants were then residing). Nylen testified that he had a composite list of the respective claims, and he unequivocally stated that he, Dr. Carroccio, Thorpe, Hoxie and the lawyers went from room to room, discussing item by item, and that many of the 97 items, mentioned in his amended report as having been com-

promised, were actually settled and compromised. He stated that all but about ten of the 102 disputed items were settled at that time, and subsequently, the remainder of the 97 items were agreed upon, Larcombe getting his authority from Carroccio, over the telephone. This testimony, to a large degree, was corroborated by Ralph Miller, appellee's attorney, and Larcombe, appellants' previous attorney, admitted that, at least, some of the items had been settled at the meeting at appellants' house. In addition, Carroccio admitted that Larcombe had called him from Nylen's office to discuss items involved in the case, and a transcribed three-way telephone conversation (from Larcombe's office) between Carroccio, Miller and Larcombe relating to other items was introduced into evidence. Carroccio and Larcombe testified that they considered the agreements concerning the various items as "tentative" in nature and not "final," and were to form the bases for further negotiations; but, as stated above, the court found to the contrary, a finding that we are not prepared to say was clearly erroneous.

In the original and amended auditor's reports, there were five items upon which the parties were unable to agree. As listed in the amended report, credits were given to the plaintiff for the following:

| | |
|---|---:|
| 1. Extra steel | $ 99.12 |
| 2. Extra electric work and fixtures | 141.88 |
| 3. Extra plumbing | 266.60 |
| 4. Lumber discount | nil |
| 5. 10% overhead on extra work | 550.79 |
| | $1,058.39 |

1. and 5. After the hearing on the exceptions pursuant to the mandate of this Court, the trial court directed the auditor to include these credits in his amended report. Judge Shure thought that 1. should be allowed because "of the structural changes made in the house," and 5. because that recommendation of the auditor was "proper." We find no error here.

At the time of re-referral, the court was undecided as to 2. and 3. and instructed the auditor to reconsider them in his

amended report (they were the same in the original report), and also several other items that the appellants claimed had been inadvertently overlooked by them and not considered. However, when both the auditor and the court were ready to hear testimony, appellants declined to offer evidence. The auditor stated that counsel of record had agreed that he should determine the claims for electrical and plumbing extras (2. and 3.) "by verifying same with the respective subcontractors and this was the method used." Again, we find no error. Item 4. was a claimed credit by the appellee for a discount on lumber, which was disallowed. The appellee did not cross appeal; hence nothing is before us concerning this item.

This brings us to a consideration of (c). Stated in the best manner that we can from a reading of the brief, and most favorably in behalf of the appellants, they seem to contend that because the special auditor failed to be sworn in accordance with Code (1957), Art. 16, § 6, before the filing of his first report, both of his reports should be stricken from the record, and any agreements and compromises made by the parties or their counsel should be held to be not binding upon the appellants. The trial court (again at the time of the hearing of the exceptions after our reversal) found that the auditor "through inadvertence" had not taken the oath "as required" by Article 16, § 6. He, thereupon, re-referred the matter to the auditor for further consideration, had the auditor take the prescribed oath, and passed an order that the oath so taken on May 9, 1961, "be effective *nunc pro tunc* to August 28, 1958."

If we assume, without deciding, that it was necessary for a special auditor, selected by the parties and appointed by a court of law at their request, to qualify by taking the oath mentioned in Article 16 (which deals with courts of equity), § 6, it avails the appellants nothing. The amended report was not prepared, nor filed, until after the oath had, in fact, been taken. In addition, the first 97 items in the report were not based upon any decision or determination of their validity, *vel non,* by the auditor, but upon the agreement of the parties, or their attorneys; hence these derived their binding effect, not

from any determination of the auditor, but from the agreement of the parties. And the few items in the amended report that were still in dispute and required a decision by the auditor were all decided after the oath had been taken.

The appellant, Margaret B. Carroccio, claims that she should not be bound by the stipulation of counsel because she did not personally authorize her counsel to enter into the same. Mrs. Carroccio owns the property with her husband; she signed the construction contract with Thorpe; she was duly served with summons when suit was instituted; she accompanied her husband to Larcombe's office when he was retained as a lawyer; Larcombe entered his appearance for both defendants; and she (using the trial court's language) "thereafter left everything to her husband, who stated that Larcombe was hired for him and his wife." Under these circumstances, we hold that Mrs. Carroccio's husband, with her authority, was acting for her in this litigation, and his actions, and the actions of the attorney that he (the husband) authorized, were binding upon her.

II

The trial court allowed the appellee four years' interest. The general rule is that where interest is not recoverable as of right, its allowance, ordinarily, is a matter within the discretion of the jury, or the court sitting as a jury. *Mullan Co. v. International Corp.*, 220 Md. 248, 151 A. 2d 906; *Affiliated Distil. v. R.W.L. Co.*, 213 Md. 509, 516, 132 A. 2d 582. However, at the hearing below, the trial judge was not trying an ordinary law case as such cases are customarily conducted. He was presiding at a hearing on exceptions to an auditor's report, pursuant to the provisions of a stipulation of the parties. Nothing is said in the stipulation concerning interest; and the stipulation explicitly provides, "either party aggrieved by said [auditor's] account may, within ten (10) days of the date they receive a copy of the same, file a list of exceptions thereto with the court, stating particularly the items of the account excepted to and the reasons therefor, and these matters will then be set for hearing before the court * * *." The account made no recommendation or provision concern-

ing interest, and the appellee failed to file any exceptions to the account. Under these circumstances, the account became binding on the appellee after the lapse of 10 days from the date of its receipt, and the trial judge was without authority to grant him interest. The judgment will, therefore, be reduced by the amount of interest allowed, and affirmed as modified.

> *Judgment reduced to $7,550.07, with interest from June 12, 1962, and affirmed as modified. ¾ of costs to be paid by appellants, and ¼ by the appellee.*