727 A.2d 421

**Giuseppina SCAMARDELLA, et vir.**

**v.**

**Fausto ILLIANO, et al.**

**No. 879, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 9, 1999.

**80**

Henry E. Weil (Belli, Weil & Grozbean, P.C., on the brief), Rockville, for appellants.

Robert R. Michael (Shadoan and Michael, on the brief) and Paul H. Ethridge (McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellees.

Argued before SALMON, THIEME and KENNEY, JJ.

THIEME, Judge.

This appeal is from an order of the Circuit Court for Montgomery County apportioning the proceeds of an aggregate settlement of claims arising from an automobile accident and an order denying the appellants' Motion to Amend the court's order. The appellants argue alternatively that there was no consent to the settlement, that the settlement agreement was unethically made and should therefore be voided, and that the court abused its discretion in apportioning the settlement. We affirm the court's order apportioning the settlement, except with regard to the attorney fees assessed against the appellants.

### Facts of the Case

This case had its genesis in a tragic automobile accident that took place on June 30, 1994. Gloria Illiano was driving southbound on Route 27 in Montgomery County, Maryland. Sara Illiano, her infant daughter, and Giuseppina Scamardella, her mother, were passengers in the car. Jeffrey Fletcher, a teenager driving northbound on Route 27, lost control of his car, crossed over the center line, and violently struck the Illiano vehicle head-on. Gloria's injuries kept her in the hospital for several weeks, and eventually proved fatal. She was twenty-four years old and had been married to Fausto Illiano for eighteen months. Giuseppina Scamardella, who was forty-eight years old at the time of the accident, also suffered severe injuries. Sara, then six months old, escaped with minor physical injuries. Giuseppina Scamardella and her husband, Cresenzo Scamardella, the appellants, who are citizens of Italy and reside in that country, and who speak very little English, retained Paul D. Bekman (Bekman) to represent them for claims arising out of the accident. Fausto

Illiano retained Bekman on his own behalf, on behalf of Sara, and on behalf of his wife's estate, of which he is the personal representative.

### Statement of the Case

On October 17, 1994, suit was filed in the Circuit Court for Montgomery County against Fletcher, his employer, William Jarcy (doing business as William Jarcy's Film Delivery Service), and Century Ford, Inc. (Century Ford). On August 28, 1995, Century Ford filed a motion for summary judgment. On February 16, 1996, the circuit court granted summary judgment in favor of Century Ford. That decision was appealed to this Court and was affirmed on April 7, 1997.

In October 1995, Fausto Illiano and Cresenzo Scamardella met with Bekman to discuss settlement of their claims in the event judgment in favor of Century Ford was affirmed on appeal. It was proposed that they would accept from Fletcher and Jarcy (the defendants) $1.25 million in settlement of their claims. The amount of the settlement offer represented the full extent of insurance coverage of the defendants. No apportionment of the settlement proceeds among the parties was proposed. It was, however, proposed that the parties would later agree to a division of the settlement. If, after acceptance of the $1.25 million settlement, agreement could not be reached on a division of the proceeds, the parties would obtain other counsel, and the court would have to apportion the monies. Although it is disputed by the appellants, it seems clear that assent to this plan was given by all the parties.

Pursuant to the parties' agreement, Bekman accepted the offer of $1.25 million in settlement of the parties' claims. At Bekman's request, Giuseppe DiRosano, the appellants' nephew, who was acting as a go-between for the appellants and Bekman, conveyed to the Scamardellas Bekman's proposal that the funds be allocated ninety percent (90%) to the claims of Fausto Illiano, Sara Illiano, and the estate of Gloria Illiano, and ten percent (10%) to the claims of Mr. and Mrs. Scamardella. When DiRosano advised Bekman that the appellants rejected the proposal, Bekman asked DiRosano to inform

them that they should retain other counsel. The appellants, through DiRosano, hired new counsel.

On July 16, 1997, when it had become apparent that counsel for the parties could not agree, Bekman filed a Motion to Allocate the Proceeds of Settlement. After filing the motion to allocate, Bekman withdrew from further participation in the case. In response to the motion to allocate, the appellants, through new counsel, objected to a division of the proceeds in the manner proposed. In an amended reply, they asserted that they had not consented to the settlement.

On March 11, 1998, the court, sitting as trier of fact, concluded after plenary hearings that the appellants had consented to the settlement and that Bekman had not breached any duties to them. The court received evidence regarding the injuries to Mrs. Scamardella, the four-week period of hospitalization of Gloria before her death, and the economic and noneconomic losses to Sara and Fausto due to Gloria's death. The court allocated the settlement monies in a manner proportionate to the respective injuries sustained and in consideration of the law of damages applicable to the parties' claims.[1] Attorney fees of one-third were deducted from the parties' allocations, as per their contingent fee arrangement. The appellants object to payment of the contingent fee out of their share of the settlement.. After further hearing on April 17, 1998, the court denied the Appellants' Motion to Amend Judgment and entered judgment accordingly. The appellants have appealed those determinations, their appeal being timely noted on May 8, 1998.

### Questions Presented

The appellants present two questions for our review, which we have recast in an abbreviated form:

---

1. The allotments, prior to the subtraction of attorney fees, were as follows:

| | | |
|---|---|---|
| Giuseppina Scamardella: | $ 96,870.74 | 7.75% |
| Estate of Gloria Illiano: | $ 66,120.65 | 5.29% |
| Fausto Illiano: | $470,569.72 | 37.65% |
| Sara Illiano: | $616,438.89 | 49.31% |

I. Did the trial court err in finding that the appellants had authorized settlement of their claims when their assent was arguably ambiguous and when they were not informed of the apportionment of the settlement prior to their consent being solicited?

II. Did the trial court abuse its discretion in allocating the $1.25 million in settlement proceeds?

In response to Question I, we say, "no." In response to Question II, in the main we say, "no." On the issue of the court's allotment of attorney fees, we reverse and remand.

### *Standard of Review*

The two questions presented to us necessitate that we employ different standards of review. We will set out those standards at the beginning of the substantive discussion of each issue below.

### *Discussion*

### *Authority to Settle*

We begin by noting that it is well settled that the attorney's authority to settle claims is a question of fact.

[T]he burden of proof of express authority of an attorney to compromise a claim rests upon the party asserting such authority. This is so because the attorney-client relationship is governed by the law of agency and the issue of burden of proof must be determined by agency principles. As the Court of Appeals observed in *Fertitta v. Herndon,* 175 Md. 560[, 3 A.2d 502] (1939):

"[W]here the relation of the agency is dependent upon the acts of the parties (as here), the law makes no presumption of agency, and then it is always a fact to be proved, with the burden of proof resting upon the person alleging the agency to show not only the fact of its existence, but also its nature and extent."

*Kinkaid v. Cessna,* 49 Md.App. 18, 23, 430 A.2d 88 (1981) (quoting *Fertitta v. Herndon,* 175 Md. 560, 564, 3 A.2d 502 (1939)) (second alteration in original) (added emphasis in

original deleted) (citations omitted). When the trial court determines a question of fact without a jury, we review such determinations only to see that they are not "clearly erroneous." Md. Rule 8–131(c); *Shallow Run Limited Partnership v. State Highway Admin.*, 113 Md.App. 156, 173–74, 686 A.2d 1113 (1996) (discussion of "clearly erroneous" standard of review).

■ The trial court found as a matter of fact that the appellees had authorized Bekman to settle their claims as a contingency following upon the failure of the appeal of the summary judgment of their claims against Century Ford. There is sufficient evidence in the record to justify such a determination. The testimony of Bekman and Fausto Illiano, which is the obvious basis for the court's conclusion, was that Mr. Scamardella, at the October 1995 meeting, both verbally (by saying, in Italian, "Yes, I understand") and nonverbally (by nodding affirmatively), clearly indicated his assent to the contingent settlement plan. We will not disturb the court's finding based on that evidence. *See Carroccio v. Thorpe*, 230 Md. 457, 463–64, 187 A.2d 678 (1963) (upholding the trial court's finding of authority to settle claims as not clearly erroneous); *Posko v. Climatic Control Corp.*, 198 Md. 578, 584, 84 A.2d 906 (1951) (same).

### *Maryland Lawyers' Rules of Professional Conduct Rule 1.8(g)*

■ The appellants argue in the alternative that Bekman violated his ethical duty when representing multiple clients by failing to make adequate disclosure of all the factors of the aggregate settlement before obtaining consent to settle. On that basis, the appellants believe, the settlement should be set aside. We disagree.

The Maryland Lawyers' Rules of Professional Conduct (MLRPC) provide that:

A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients . . . unless each client consents after

consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

MLRPC Rule 1.8(g) (1986). The appellants argue that the duty to disclose "the participation of each person ·in the settlement" requires that each client be informed not only of the involvement of all other clients in the settlement, but also of the exact share of the settlement proceeds that each is to receive. The weight of authority does not mandate that view in this case.

The cases that interpret Rule 1.8(g),[2] including those cited by the appellants, are in the main about the failure to obtain consent, not about the scope of disclosure. *See* ABA, *Annotated Model Rules of Professional Conduct* 134–35 (3d ed.1996) (annotations to Rule 1.8(g)) (citing *In re Sonnier*, 157 B.R. 976 (Bankr.E.D.La.1993); *Knisley v. City of Jacksonville*, 147 Ill.App.3d 116, 100 Ill.Dec. 705, 497 N.E.2d 883 (1986), *appeal denied*, 113 Ill.2d 575, 106 Ill.Dec. 47, 505 N.E.2d 353 (1987); *In re Deloney*, 470 N.E.2d 65 (Ind.1984); *Estate of Vafiades v. Sheppard Bus Serv., Inc.*, 192 N.J.Super. 301, 469 A.2d 971 (Law Div.1983); *Oklahoma ex rel. Oklahoma Bar Ass'n v. Watson*, 897 P.2d 246 (Okla.1994); *In re Green*, 291 S.C. 523, 354 S.E.2d 557 (1987)); *see also Hayes v. Eagle–Picher Indus., Inc.*, 513 F.2d 892 (10th Cir.1975); *Scott v. Randle*, 697 N.E.2d 60 (Ind.Ct.App.1998).

Few cases have addressed directly the scope of disclosure required by Rule 1.8(g). *See In re Anonymous Member of the South Carolina Bar*, 297 S.C. 517, 377 S.E.2d 567, 568 (1989) (noting the dearth of relevant authority); *cf. Acheson v. White*, 195 Conn. 211, 487 A.2d 197, 201 (1985) (reserving the question of whether an attorney with a conflict of interest arising from multiple representation "can never effectively

**2.** Maryland Rule of Professional Conduct 1.8(g) comes directly from the ABA Model Rules of Professional Conduct 1.8(g) (1983), which has now been adopted in a majority of states. Rule 1.8(g) is substantially identical to the prior ABA Model Code of Professional Responsibility Disciplinary Rule 5–106 (1969), which is still in force in a few states.

make the required disclosure"). One case that does seem to support the appellants' contention directly is *Quintero v. Jim Walter Homes, Inc.,* 709 S.W.2d 225 (Tex.App.1985). *Quintero* involved the settlement of nearly 350 claims of misrepresentation against a builder. The appellants in that case had, unbeknownst to them, won a separate judgment against the appellee prior to consenting to a significantly smaller settlement. The Court set aside the settlement on the basis that the appellants had not been "informed of the nature and settlement amounts of all the claims involved in the aggregate settlement, nor were they given a list showing the names and amounts to be received by the other settling plaintiffs." *Id.* at 229.

*Quintero* is distinguishable on its facts from the case sub judice. *Quintero* involved a class-action-sized multiple representation, where all the plaintiffs were effectively anonymous, and their claims and their settlement allocations unknown to each other. The allocations were to be determined by the plaintiffs' attorney, and the process was to be overseen by the defendant's legal staff. Additionally, upholding the settlement would have involved a clear injustice, given that the judgment previously won by the appellants was several times the size of the settlement that they had agreed to without actual knowledge of the judgment. None of these elements are present in the case sub judice. Here the parties are all well known to each other, as are their claims. The settlement amount is plain. A method for formulating the apportionment was agreed upon, and any resulting apportionment either would be disclosed or would be transparent. Finally, there would be no such obvious injustice in upholding the settlement in this case where it is agreed the maximum recovery had been obtained. In fact, quite the opposite situation pertains. Upsetting the settlement would work against justice.

Additionally, other cases have held that an incomplete disclosure did not defeat a consented-to settlement when the information provided was adequate to make an intelligent decision to consent. *See In re Petition of Mal de Mer Fisheries, Inc.,* 884 F.Supp. 635, 639–40 (D.Mass.1995) (up-

holding settlement even though fact of aggregate settlement was not disclosed); *In re Anonymous Member of the South Carolina Bar*, 377 S.E.2d at 568 (stating in dictum that safeguards to fairness of settlement were adequate, and holding that no disciplinary sanction ought to be imposed in that particular case, despite the fact that attorney failed to disclose names and settlement amounts of other parties to aggregate settlement); *cf. Acheson*, 487 A.2d at 199–200 (upholding the conclusion that "the appellant's consent to the terms of the stipulated judgment as they affected her interest in [the property at issue] did not necessarily depend upon her specific knowledge of what interests in that property might be retained by other defendants not similarly situated"). Like these cases, we hold that the information provided to the appellants was sufficient to safeguard their rights, and we do not find the need to apply Rule 1.8(g) with the harsh force of *Quintero.*

Another crucial distinction between the present case and all the others we have examined is that in this case the deficiency of disclosure did not result from a withholding of information but rather from a failure to formulate in advance the apportionment itself. This distinction is admittedly rather fine. The appellants were left with an obvious uncertainty concerning apportionment when making their decision to consent to the settlement proposal. On the other hand, the very failure to formulate an apportionment preserved the representation from the major conflict of interest that occurs in aggregate settlement cases. In cases like the present one, where the maximum available settlement was reached, the apportionment of the settlement is *exactly* the locus of the conflict for the attorney: however much one party receives automatically means a detriment to the other party or parties. *See North Carolina State Bar v. Whitted*, 82 N.C.App. 531, 347 S.E.2d 60, 64 (1986), *aff'd*, 319 N.C. 398, 354 S.E.2d 501 (1987); *In re Guardianship of Lauderdale*, 15 Wash.App. 321, 549 P.2d 42, 45–46 (1976). If the multiple representation is to continue, this conflict may be resolved only by the consent of all the parties, fully informed as to the apportionment of the settle-

ment. In the present case, when this particular conflict of interest arose the parties sought and obtained separate counsel, thus avoiding the conflict.

The appellants further argue that the substitute for apportionment—namely, the agreement to seek consensus concerning apportionment or, failing that, to petition the court to divide the settlement proceeds—was void as an "agreement to agree." The appellants cite *Horsey v. Horsey,* 329 Md. 392, 620 A.2d 305 (1993), for this proposition. The agreement in *Horsey* was not, however, an "agreement to agree" strictly speaking. Rather, it was an agreement to agree with a provision for arbitration following upon a failure to agree. The difficulty came when both parties waived arbitration, as was their right.

> Because of the waiver of arbitration, the modification provision of the Horseys' separation agreement is simply an agreement to attempt to agree in the future, without any guidelines, formula or basis for ascertaining the amount of modification. In accordance with the principles that the terms of a contract must be sufficiently definite for enforcement and that a court will not make a contract for the parties, it is generally held that an "agreement to agree" is unenforceable.

*Id.* at 420, 620 A.2d 305. But for the waiver of arbitration the agreement in *Horsey* would have been upheld because it is also generally held that "[a]n agreement is not unenforceable for lack of definiteness of price or amount if the parties specify a practicable method by which the amount can be determined by the court without any new expression by the parties themselves.... It is sufficient if the agreement provides that the price shall be the amount that arbitrators or that X, a specific third person, shall fix as a fair price." 1 *Corbin on Contracts* § 4.4, at 581, 583 (Joseph M. Perillo ed., rev. ed.1993) (footnote omitted); *see also* 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 3.28, at 402 (2d ed.1998). We applied this rule in *Hanna v. Bauguess,* 49 Md.App. 87, 430 A.2d 104 (1981), where, reversing the chancellor, we found a lease purchase option not void for indefiniteness when its only

specification as to price was that it was to be determined by three independent appraisers at the expiration of the lease. *Id.* at 95–96, 430 A.2d 104.

■ In the present case, the agreement as to apportionment of the settlement required the parties to attempt to agree on a division and, failing that, to submit the problem to the court. When the parties failed to agree on an apportionment, the question was submitted to the court. Neither party disputes, and it is established, that the authority to divide the proceeds of a settlement is within the discretionary powers of the trial court, *Jones v. Jones,* 259 Md. 336, 343–44, 270 A.2d 126 (1970), and so there is no objection to the court as a proper arbiter of settlement apportionment as per the parties' agreement. While the agreement as to apportionment of the settlement in this case may be unusual, we do not find it to be void for vagueness as an agreement to agree.

Finally, we must emphasize the great seriousness with which we take the ethical requirements of Rule 1.8(g) in cases involving an aggregate settlement. In the present case, we find the disclosure, in its specific context, to be adequate to protect the rights of the appellants. In doing so, we place great weight on the fact that the parties agreed that the settlement amount represented the maximum potential recovery and, thus, was in the best interest of everyone. We stress, however, that the fullest disclosure is the best disclosure, and note that other courts have used an attorney's failure of appropriate disclosure as the grounds for setting aside the apportionment of a settlement, *In re Guardianship of Lauderdale,* 549 P.2d at 45–46; as the grounds for setting aside an entire settlement, *Quintero,* 709 S.W.2d at 229; and as partial grounds for disbarment in a disciplinary proceeding. *Whitted,* 347 S.E.2d at 64.

### Division of Settlement Proceeds

■ Finally, we have been asked to review the court's division of the settlement proceeds. That is an action within the discretion of the court. " '[J]udicial discretion' means 'that power of decision exercised to the necessary end of awarding

justice and based upon reason and law, but for which decision there is no special governing statute or rule.' " *Colter v. State,* 297 Md. 423, 426–27, 466 A.2d 1286 (1983) (quoting *Saltzgaver v. Saltzgaver,* 182 Md. 624, 635, 35 A.2d 810 (1944) (quoting Renzo D Bowers, *The Judicial Discretion of Trial Courts* § 10, at 13–14 (1931))). The Court of Appeals has previously held that the power to divide and distribute the proceeds of the settlement of a tort claim is such a discretionary power. *Jones,* 259 Md. at 343–44, 270 A.2d 126; *cf. Ross v. Ross,* 90 Md.App. 176, 188, 600 A.2d 891, *judgment vacated on other grounds,* 327 Md. 101, 607 A.2d 933 (1992) (holding that "both the amount and manner of payment of a monetary award [following divorce] are committed to the discretion of the trial court").

It follows, therefore, that we will review the court's distribution of tort claim settlement proceeds for an abuse of the court's discretion. We will find an abuse of discretion only if "the ruling either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective." *North v. North,* 102 Md. App. 1, 14, 648 A.2d 1025 (1994); *see also id.* at 13–14, 648 A.2d 1025 (more complete discussion of "abuse of discretion" standard of review). The appellants make several specific arguments concerning the court's exercise of discretion in this matter. We will address each briefly in turn.

First, the appellants argue that the appellees' share of the settlement is limited to the amount they indicated in the Motion to Allocate. For this proposition they cite *Scher v. Altomare,* 278 Md. 440, 365 A.2d 41 (1976), wherein the Court of Appeals stated that "the recovery, if any, by the plaintiff cannot exceed in nature or amount either the damage proved or the sum claimed in the *ad damnum,* whichever is the lesser." *Id.* at 442, 365 A.2d 41. What was at issue in *Scher* was damages, proven or pled, as an element of a claim at law. Of course, that rule has no relevance to the equitable division of settlement proceeds by the court. Even if *Scher* were relevant, we would note that the statement quoted above is

dictum. *See Falcinelli v. Cardascia,* 339 Md. 414, 423, 663 A.2d 1256 (1995). The Court of Appeals has since clarified the rule, given the liberality of the rule on amending complaints, Md. Rule 2–341, and has held "that the ad damnum does not inherently limit the power of the jury to render a verdict and does not inherently limit the power of the court to enter a judgment." *Falcinelli,* 339 Md. at 427, 663 A.2d 1256. An amendment to an ad damnum clause of a complaint may be made at almost any time, even after a jury verdict has been returned. *See* Md. Rule 2–341(b) Committee note; *see also Owens Corning v. Bauman,* 125 Md.App. 454, 526–30, 726 A.2d 745, 781–82 (1999). Finally, if it needed to be pointed out, we would note that the appellees' Proposed Findings of Fact and Conclusions of Law filed with the court before its apportionment of the settlement was in accord with that apportionment.

Second, the appellants argue that the method used by the court to divide the settlement, namely calculating proportional shares rather than equal shares, was an abuse of discretion. To the contrary, the clear policy in Maryland is for proportional shares. *See* Md.Code (1974, 1998 Repl.Vol.) § 3–904(c)(1) of the Courts and Judicial Proceedings (CJP) Article (Maroon Volume) ("[D]amages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death."). Within the contemplation of that policy is the requirement that even proportional awards be reduced by statutory damage award caps. *See id.* §§ 3–904(c)(2), 11–108(b),(d). If the court had used another method of apportioning the settlement, we would be prepared to entertain an abuse of discretion argument. As it is, the court's use of the proportional shares method was clearly not an abuse of discretion.

Third, the appellants argue that because the accident took place on June 30, 1994, a date during the period when Maryland's statutory cap on noneconomic damages did not apply to wrongful death claims,[3] the appellees have re-

---

**3.** On March 11, 1993, the Court of Appeals decided *United States v. Streidel,* 329 Md. 533, 620 A.2d 905 (1993), holding that CJP § 11–108,

ceived a kind of windfall in that their share of the settlement was not calculated with the statutory cap in mind. The appellants argue that the court's refusal to take the cap into consideration was an abuse of discretion. Discretion does not mean whatever the court arbitrarily wills; rather "discretion means 'sound discretion guided by law.'" *Saltzgaver,* 182 Md. at 632, 35 A.2d 810. In this case, the law forbids the retrospective application of the statutory damages cap. *See United States v. Searle,* 322 Md. 1, 5–6, 584 A.2d 1263 (1991) (holding that "absent clear legislative expression to the contrary, statutes are to be applied only prospectively and shall not be given retroactive effect. The $350,000 cap is prospective only and should not be given retroactive effect as a presumptive maximum"). Because the cap would not have applied to any judgment rendered in this case, it is no abuse of discretion not to have applied it to the appellees' shares in calculating the division of settlement proceeds.

▮▮ Fourth, the appellants suggest that the appellees were the beneficiaries of another kind of windfall, in this case one flowing from the fact that the insurance policies by which the settlement was paid were of the "aggregate coverage" type rather than the purportedly more common "per person/per occurrence" type, thus affording the appellees a larger share of the settlement than they would otherwise have received. Regardless of the truth of this claim, it is manifestly irrelevant. A court in the exercise of its discretion should not rest its decision on a hypothetical case, particularly not on one contrary to the actual facts. *Cf. Sininger v. Sininger,* 300 Md. 604, 616, 479 A.2d 1354 (1984) ("[T]his Court decides actual cases, not hypotheticals."). We find no abuse of discretion in this matter.

---

Maryland's statutory cap on noneconomic damages, did not apply to wrongful death claims. *Streidel,* 329 Md. at 537, 620 A.2d 905. The following year the General Assembly passed an amendment to § 11–108 explicitly including wrongful death claims within the cap, effective October 1, 1994. Judgments—Limitations on Noneconomic Damages Act, ch. 477, 1994 Md. Laws 2292 (codified as amended at CJP § 11–108); *see also Cole v. Sullivan,* 110 Md.App. 79, 91, 676 A.2d 85 (1996).

 Fifth, the appellants assert that there was no competent evidence to support the court's apportionment of noneconomic damages to the appellees and that the court's apportionments in that regard constitute an abuse of discretion. Damages in the case of the wrongful death of a spouse or the parent of a minor child

> are not limited or restricted by the "pecuniary loss" or "pecuniary benefit" rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable. . . .

CJP § 3–904(d); *see also Daley v. USAA,* 312 Md. 550, 553 & n. 2, 541 A.2d 632 (1988). In the present case, the court heard testimony from Fausto Illiano who, speaking in a language that is not his mother tongue, described the loss experienced by his infant daughter and by himself. This testimony was not challenged at the time it was given nor afterward in the appellants' Motion to Amend. It certainly is no abuse of discretion for the court to have found this testimony competent evidence when apportioning noneconomic damages to the appellees.

 Finally, the appellants object to the payment out of their share of the settlement of attorney fees to Bekman. The appellants had entered into a contingent fee contract with Bekman in July 1994, agreeing that he should be paid 33 ⅓ percent of the gross amount recovered for legal services rendered, including the compromising of their claims. The appellants claim that the contingency fee should not be assessed against their share of the settlement because Bekman labored under a conflict of interest throughout his representation of all the parties. The trial court explicitly found, however, that there was no conflict of interest in Mr. Bekman's representation of all the parties to the settlement in the period before the appellants indicated disapproval of the proposed settlement distribution. Such a determination of a conflict of interest is a question of fact. *See Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 379, 653 A.2d 909 (1995) (citing

*Austin v. State,* 327 Md. 375, 609 A.2d 728 (1992); *In re Special Investigation No. 231,* 295 Md. 366, 455 A.2d 442 (1983); *McCoy v. Warden,* 234 Md. 616, 198 A.2d 245 (1964); *Pressley v. State,* 220 Md. 558, 155 A.2d 494 (1959)) ("While the law is clear that the mere representation by one lawyer of two defendants charged with the same offenses does not of itself constitute a conflict of interest, whether or not a conflict exists must be determined by the facts of each individual case."). As noted above, we review the court's determination of questions of fact only to insure that they are not clearly erroneous. Md. Rule 8–131(c); *Shallow Run Limited Partnership,* 113 Md.App. at 173–74, 686 A.2d 1113. We find no clear error here.

We are concerned, though, that the appellants be charged appropriately for their representation by Bekman. That representation was on a contingency basis. The rules governing remuneration of an attorney under such circumstances are clear. A contingent fee is earned only on the occurrence of the contingency, but his subsequent dismissal will not affect his right to the contingent fee. *See* 7A C.J.S. *Attorney & Client* §§ 313, 319 (1980). If the attorney-client relationship ends before the occurrence of the contingency, his compensation is determined by how the relationship ended. If the attorney is discharged for cause in a situation in which the attorney commits serious misconduct, he will receive no compensation. *See Somuah v. Flachs,* 352 Md. 241, 256, 721 A.2d 680 (1998). If the attorney is discharged for cause, but the cause is only the good faith dissatisfaction of the client with representation during which the attorney has acted competently, then the attorney is entitled to be compensated for the reasonable value of services rendered prior to discharge. *See id.* at 256, 258, 721 A.2d 680. Under such circumstances, in a contingent fee contract the attorney must await the occurrence of the contingency before he can claim even the reasonable value of his pre-discharge services. *See id.* at 256, 721 A.2d 680. Finally, if the attorney is discharged without cause, *i.e.,* when the client has "no basis for being dissatisfied with the attorney's services or the discharge is in bad faith," or if

▆▆▆▆▆▆▆▆▆▆▆

the attorney himself withdraws with justification, then he may recover a fee *quantum meruit* immediately upon discharge or withdrawal. *See id.* at 255, 721 A.2d 680.

In the present case, we do not find the record complete enough to make the requisite determinations of these issues. We find insufficient information to determine when Bekman's representation of the appellants concluded; whether that conclusion was a discharge by the appellants or withdrawal by Bekman, and, if it was a discharge, what the grounds for the discharge were; when the contingency, in this case, the settlement, occurred; and what the grounds for the discharge were.[4] There is certainly no information with which to calculate a quantum meruit fee should that be the required result. *See id.* at 265–66, 721 A.2d 680. We therefore reverse the circuit court's assignment of attorney fees and remand the case to the circuit court to make the appropriate determinations.

### Conclusion

We affirm the judgments of the circuit court against the appellants on all issues except that of the attorney fees charged against the appellants' share of the settlement. On that latter issue, we remand to the circuit court to make the requisite determinations in accord with this opinion.

**JUDGMENT AFFIRMED, EXCEPT WITH REGARD TO THE ISSUE OF ATTORNEY FEES, WHICH WE REVERSE AND REMAND.**

**COSTS TO BE PAID 75% BY THE APPELLANTS; 25% BY THE APPELLEES.**

----

4. In the record, among the parties' exhibits, we did find a letter from Peter A. Allegra, one of the appellants' new attorneys, dated April 18, 1997, and informing Bekman that he, Allegra, was taking over representation of the appellants. There is also in the record a letter from Bekman to the defendants' attorney, dated April 23, 1997, that "confirms the fact that the parties will accept" the settlement offer. These exhibits suggest to us that Bekman ended his representation of the appellants prior to the occurrence of the relevant contingency, namely, the formal acceptance of the settlement. We will, however, leave such determinations to the circuit court on remand.