Saunders **DORSEY**, et al. Plaintiffs

v.

**THE HOME DEPOT U.S.A., INC., et al. Defendants**

No. CIV. PJM 01–1449.

United States District Court, D. Maryland.

March 27, 2003.

Saunders Dorsey, Farmington Hills, MI, Lolita James Martin, Bowie, Lauan F. Martin, Washington, D.C., Lynda Vincienne Rice, Alexandria, VA, for Plaintiffs.

Keith A. Halpern, Roxane Sokolove Marenberg, Washington, DC, Richard W. Black, Washington, DC, Joseph B. Chazen, Riverdale, MD, for Defendants.

## OPINION

MESSITTE, District Judge.

Saunders Dorsey and LaJuan Martin have sued The Home Depot U.S.A., Inc. ("Home Depot") for intentional interference with contract.[1] Home Depot has filed a Motion for Summary Judgment which Dorsey and Martin oppose. Dorsey and Martin have filed a Counterclaim for Summary Judgment which Home Depot has moved to strike and which, in any event, it opposes. The Court will DENY Home Depot's Motion to Strike and Plaintiffs' Counterclaim for Summary Judgment. The Court will GRANT Home Depot's Motion for Summary Judgment as to Plaintiff Martin and DENY it WITHOUT PREJUDICE as to Plaintiff Dorsey.

I.

Beginning in early April, 2001, Dorsey, a Michigan attorney not admitted to practice in Maryland,[2] signed retainer agreements

---

1. Home Depot removed the case here from the Circuit Court for Prince George's County.

2. Home Depot avers that Dorsey was suspended from the practice of law in Michigan in October, 2002. The transactions in question, however, would predate any such suspension.

with a number of Home Depot employees who were located in Maryland. His representation related to alleged employment discrimination practices that the employees were subjected to at Home Depot. Dorsey initiated a complaint on behalf of some of these employees with the Baltimore District office of the Equal Employment Opportunity Commission. At or about that time, he also sent to attorneys for Home Depot copies of his cover letter to the EEOC indicating his intention to represent the Home Depot employees before that agency. Dorsey engaged Martin, who was also not admitted in Maryland,[3] to serve as local counsel in the case.

Some time thereafter, corporate representatives of Home Depot (specifically M. Faye Wilson, then Senior Vice President in Home Depot's Atlanta office) initiated direct communications with the Home Depot employees without advising or involving Dorsey. Dorsey, upon learning of this direct contact, sent a letter to Wilson and a copy to Jocelyn Hunter, Senior Counsel at Home Depot, reaffirming that he represented the employees and requesting that all communications thereafter be directed to him. Notwithstanding the letter, by May 18, 2001, Home Depot had apparently reached settlements with various of the employees, again without either involving Dorsey or advising him of that fact. According to Dorsey, the employees were coerced into terminating him as their attorney and settling their claims by reason of threats and/or inducements made by Home Depot representatives.

Dorsey and Martin followed with the present litigation.

## II.

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56; *see also Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material issue of fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party satisfies his initial burden, the non-moving party "may not rest upon his allegations," but must present evidence demonstrating the existence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is obliged to view the facts and inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Comp. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III.

Home Depot argues, as an initial matter, that Martin's claim fails because he had no contractual relationship with any of the employees involved in the discrimination claim; hence he cannot claim that Home Depot intentionally interfered with such. Martin admitted in deposition that he did not enter into retainer agreements with any of the employees. Martin Dep. at pp. 138–9 (Q: "Did you enter into any retainer agreement with any purported client that forms the basis of this case, you personally?" A: "No. My relationship

---

**3.** Apparently Martin is admitted to practice only in the Commonwealth of Pennsylvania, although he maintains his principal law office in the District of Columbia. Under those circumstances, he would not qualify to be a member of the Bar of this Court. *See Local Rule* 701.1.a.

was the association with the attorneys."). Since a cause of action for intentional interference with contract presupposes the existence of a valid contract between the plaintiff and a third party, *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 466, 598 A.2d 794, 802 (1991), Home Depot's Motion for Summary Judgment as to Martin will be GRANTED.

### IV.

Home Depot's first argument as to Dorsey is that his contracts with the employees were illegal because he was a Michigan attorney not admitted to practice in the State of Maryland.[4] Home Depot cites *Goldsmith v. Mfr.'s Liab. Ins. Co.*, for the proposition that "a contract entered into by an unlicensed person engaged in a trade, business or profession, required to be licensed, and made in the course of such trade, business or profession, cannot be enforced by such person" if the licensing requirement was for the protection of the public and not merely to raise revenue. 132 Md. 283, 103 A. 627, 628 (1918). Dorsey cites no authority in opposition, but argues that because he would have been admitted to practice *pro hac vice* in due course, Home Depot's argument is without merit.

■ In fact there is authority that supports Dorsey's position and the Court finds it persuasive. In *Shapiro v. Hazard*, the United States District Court for the District of Columbia held that a retainer agreement between an out-of-state attorney not yet admitted *pro hac vice* and a client was a valid contract. 24 F.Supp.2d 66, 82 (D.D.C.1998) ("Defendants' interpretation of the law would, therefore, put an out-of-state attorney seeking to represent a client in California in an impossible position: he would be unable to enter into a valid retainer agreement until he had been admitted *pro hac vice,* but he would also be barred ... from being admitted *pro hac vice* until he was retained by a client."); *see also* Restatement of the Law Third, The Law Governing Lawyers, § 3, Comment e ("Admission *pro hac vice* normally permits the lawyer to engage within the jurisdiction in all customary and appropriate activities in conducting the litigation, including appropriate office practice. Activities in contemplation of such admission are also authorized, such as investigating facts or consulting with the client within the jurisdiction prior to drafting a complaint and filing the action."). Home Depot's Motion for Summary Judgment as to Dorsey on this ground will therefore be DENIED.

### V.

■ The second argument in support of Home Depot's request for summary judgment against Dorsey is that it lacked knowledge of the contracts that Dorsey had with its employees and therefore cannot be held liable for intentional interference with contract which, by definition, requires knowledge and intent. *See* Restatement of Torts Second, § 766A. Dorsey, however, has adduced ample evidence suggesting that, to the contrary, Home Depot and/or its agents in fact knew or had reason to know of his representation. This evidence includes the letter he sent attorneys for Home Depot at the time of the EEOC filing, the notices sent by the EEOC to Home Depot, and the letter to Home Depot Vice President Wilson. In addition, Home Depot appears to have been at pains to obtain from each of the affected employees statements to the effect that they were not represented by counsel. This, too, suggests that Home Depot may have known or at least suspect-

---

**4.** The Court will assume, for present purposes, that Home Depot has standing to raise the issue of illegality of the contracts between Dorsey and the Home Depot employees.

ed that the employees were represented by counsel. Home Depot's Motion for Summary Judgment on this ground is also DENIED.

## VI.

There are a few further aspects of the case which, while not raised by Home Depot, merit comment at this time. The Court offers these observations with the thought that the pleadings may be brought more sharply into focus hereafter.

■ First, assuming evidence shows that Home Depot knew about Dorsey's representation of the employees, the Complaint implies that any contact between the corporate representatives of Home Depot and the employees would be improper and therefore actionable. But that is not so. Nothing in the law prohibits litigants or potential litigants from speaking among and between themselves, as opposed to attorneys for such parties attempting direct communications with represented parties. *See* Md. Rule of Prof. Cond. 4.2, Comment ("[P]arties to a matter may communicate directly with each other and a lawyer having independent justification or legal authorization for communicating with a represented person is permitted to do so."). The core of Dorsey's Complaint, if it is cognizable at all, would have to be that Home Depot ultimately caused its employees to breach their agreements with him. There could be no impropriety in the mere fact that there were direct communications between Home Depot officials and its employees.

However, even entering into settlements with the employees will not necessarily establish a cause of action for intentional interference with contract. There is no doubt that attorneys can sue third parties for interfering with contingency contracts they have with clients. *See Sharrow v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 511 A.2d 492 (1986). Moreover, attor-

neys have been held able to sue employers who have settled directly with their employees, knowing the employees were represented by the attorneys. *See, e.g., Studdard v. Evans*, 108 Ga.App. 819, 135 S.E.2d 60 (1964). But the cases suggest that there must have been something wrongful about the contact that the third party had with the employee before the attorney's cause of action will be recognized. *See, e.g., Boyd*, 125 A. at 698 ("[T]he great weight of authority sustains the right of a client, at any time before judgment, *if acting in good faith*, to compromise, settle, or dismiss his cause of action, without his attorney's intervention, knowledge or consent.") (emphasis added); *see also* Restatement of Torts Second, § 766A, Comment a ("In order for the actor to be held liable, this Section requires that his interference be improper.").

In *Dombey, Tyler, Richards & Grieser v. Detroit T.&I.R. Co.*, 6 Ohio Misc. 185, 351 F.2d 121, (6th Cir.1965), a railroad's agent, with knowledge of the existence of an attorney-client contract, persuaded the client to settle his personal injury claim directly with the railroad. The railroad promised that it would pay any attorney's fees and composed a letter to the attorney informing him that the case had been settled. The court held that there was insufficient evidence that the railroad had interfered with the contract, noting that the

> fundamental principle from which analysis must begin is that a representation contract which restricts a tort claimant's right to settle his claim without his attorney's consent is completely void and unenforceable. *Davy v. Fidelity & Cas. Ins. Co.*, 78 Ohio St. 256, 267, 85 N.E. 504, 17 L.R.A.N.S., 443 (1908). In recognition of this principle no claim is made that the mere fact of settlement between Craig and the railroad would in any way interfere with plaintiffs' representation contract. We are unable to

find anything in the "manner" of settlement which changes the application of this principle. *Id.* at 125.

In *Goldberg v. Whitehead,* 713 A.2d 204 (R.I.1998), the president of a company that was defending a suit for unpaid commissions attempted to resolve the matter directly with the plaintiff after the plaintiff's attorney had filed suit. In denying liability for intentional interference with contract, the Rhode Island court held that no statute, rule, or case law prohibited the parties in a civil action from directly contacting each other to attempt to settle their dispute prior to trial. *Id.* at 207; *compare The Golden Star,* 82 F.2d 687 (9th Cir.1936) (holding that because of the absence of evidence of fraud or collusion in the settlement between a shipowner and a represented employee in a tort claim, the attorney's claims were properly dismissed), *with Gordon v. Mankoff,* 146 Misc. 258, 261 N.Y.S. 888 (1931) (holding that the rule giving the client the right to terminate his attorney at will does not justify disruption by a third person of that relationship when the interference is done maliciously, and concluding that the attorney had stated a cause of action for interference).

Given the state of the pleadings in the present case, it is questionable whether Dorsey has made allegations or adduced evidence sufficient to establish the wrongfulness of the action taken by Home Depot, assuming it settled with Dorsey's clients with knowledge of his representation.

One potentially difficult circumstance from Dorsey's standpoint is that all the employees appear to have executed and delivered to Home Depot statements indicating that they were *not* represented by counsel.[5] If a third party can settle with a represented party without advising known counsel, *a fortiori* the third party can have no obligation to look beyond a client's express affirmation that he is not represented by counsel. If, then, Home Depot's employees voluntarily executed declarations of non-representation, Dorsey's claim would be fatally undermined.

In light of this, the Court will DENY Home Depot's Motion for Summary Judgment with respect to Dorsey as presently constituted. The Court will, however, permit Home Depot to file a Supplemental Motion for Summary Judgment raising the issue of whether a cause of action for intentional interference with contract has either been properly alleged or *prima facie* established by Dorsey.

Home Depot shall file such motion within thirty (30) days of this Opinion and Order.

## VII.

Although Plaintiffs' Counterclaim for Summary Judgment was untimely filed, the Court has determined to accept it. Accordingly, Home Depot's Motion to Strike Plaintiff's Counterclaim for Summary Judgment is DENIED. However, based on the same reasoning applied to Home Depot's Motion, Plaintiffs' Counterclaim for Summary Judgment will also be DENIED.

A separate Order implementing this Opinion will issue.

---

**5.** Maryland law makes clear that a party may discharge an attorney at any time in connection with a proposed representation, *Palmer v. Brown,* 184 Md. 309, 316, 40 A.2d 514, 517 (1945), although, to be sure, the party discharging an attorney without cause may be liable in *quantum meruit* for the services rendered. *Scamardella v. Illiano,* 126 Md.App. 76, 95–6, 727 A.2d 421, 430 (1999).

### ORDER

Upon consideration of Motions pending before the Court, it is for the reasons set forth in the accompanying Opinion this 27 day of March, 2003

ORDERED:

1) Defendant's Motion to Strike (Paper No. 51) is DENIED;

2) Plaintiffs' Counterclaim for Summary Judgment (Paper No. 43) is DENIED;

3) Home Depot's Motion for Summary Judgment or Partial Summary Judgment (Paper No. 39) is GRANTED in part and DENIED WITHOUT PREJUDICE in part;

4) The case is DISMISSED as to Plaintiff Martin; and

5) Home Depot shall have leave to file a Supplemental Motion for Summary Judgment within thirty (30) days hereof.