ELLEN ROBINSON ET AL. *v.* STEVEN
LEWIS ET AL.

[No. 593, September Term, 1973.]

*Decided April 18, 1974.*

The cause was argued before THOMPSON, MOORE and LOWE, JJ.

*Albert J. Ahern, Jr.*, with whom was *William R. Scannell* on the brief, for appellants.

*Patrick J. Attridge* for appellee.

THOMPSON, J., delivered the opinion of the Court.

Ellen Robinson, administratrix of the estate of her husband, Ceroy Robinson, brought suit in the Circuit Court for Prince George's County against Steve Lewis, the defendant, for injury, pain and suffering sustained by the decedent in an automobile accident with the defendant. In the second count, she sought damages for the use of Ellen Robinson, widow, and for Benita Robinson, a minor child of the decedent, under Md. Code, Art. 67, §§ 1-6.[1] A jury returned a verdict in her favor in the amount of $15,000 on count one of the declaration but found in favor of the defendant as to the second count. Robinson appeals from the judgment on the second count. There was no appeal from the judgment on the first count.

The major question presented on appeal concerns the admissibility of hearsay complaints made by the deceased as to pain in his legs during the period after the accident, October 30, 1970, and the date of death, November 18, 1970, for the purpose of proving injury to the legs. On this appeal we are not concerned with the proof of pain and suffering.

1. Now covered by Courts & Judicial Proceedings Article §§ 3-901 — 3-904.

The suit was initially brought against Susan S. Mannon, but was dismissed as to her prior to trial.

The cause of action arose in Maryland. thus the suit should have been titled under Md. Rule Q41 a instead of Q41 b, and brought to the use of all parties not joining in the action. This question was not raised below nor on appeal.

The complaints were offered through the testimony of Ellen Robinson, his widow, and Cecil Robinson, his adult son.

The question presents two problems; the first, whether or not the evidence is admissible under any exception to the hearsay rule. We have discovered only two Maryland cases discussing the precise problem. In *Geiselman v. Schmidt*, 106 Md. 580, 584, 68 A. 202 (1907), the Court said: "The third exception was taken to the ruling of the Court in allowing Mrs. Schmidt, wife of the plaintiff, to testify to the fact that the plaintiff complained of suffering from his injuries. As the declarations of bodily pain and suffering as the result of injury are always admissible, there was no error in this ruling." In *Pennsylvania Railroad Company v. Simmons*, 159 Md. 114, 121, 150 A. 263 (1930), the Court tersely said: "The sixth exception was to permitting a relative to testify that while the plaintiff was in bed she complained of headaches. No error." Although the Maryland cases do not give the rationale for the admission of such evidence, Professor Wigmore does in his treatise, VI Wigmore, *Evidence* § 1718 (3d ed. 1940):

> "It is for statements of physical pain or suffering that the exception has been longest recognized and the principle most fully and clearly reasoned out. The general principle is illustrated in the following passages:
>
> \* \* \*
>
> "1858 Redfield, C. J., in *State v. Davidson*, 30 Vt. 383: 'The declarations of the party are received to show the extent of latent injuries upon the person, upon the general ground that such injuries are incapable of being shown in any other mode except by such declarations as to their effect.' " [2]

---

2. *See* VI Wigmore, *Evidence* § 1746: "It follows that utterances not thus used testimonially as assertions to prove the truth of the fact asserted are without the scope of the prohibition and are receivable in spite of the Hearsay rule. Such utterances may be of three different sorts . . . (1) words the utterance of which is a fact forming part of the issue (*e.g.* the words of a contract or a slander); (2) words uttered at the time of doing a material equivocal act, and forming part of the total conduct which determines the

*See also* C. McCormick, *Evidence* § 265 (1954).

A second question concerns the admissibility of such evidence under the "Dead Man's Statute," Md. Code, Art. 35, § 3, which provides as follows:

> "In actions or proceedings by or against executors, administrators, heirs, devisees, legatees or distributees of a decedent as such, in which judgments or decrees may be rendered for or against them, . . . no party to the cause shall be allowed to testify as to any transaction had with, or statement made by the testator, intestate ancestor . . ." [3]

*State v. Brainin*, 224 Md. 156, 165, 167 A. 2d 117 (1961), involved a suit brought under what is now Courts Art. §§ 3-901 — 3-904 (Lord Campbell's Act) in the name of the State of Maryland for the use of the husband and minor children of a deceased. The Court held that the husband and a daughter could testify that, in their presence, the deceased had informed the defendant doctor of certain symptoms, even though the witnesses were to be beneficiaries of any

---

legal significance of the act (*e.g.* words of ownership-claim accompanying the occupation of land); and (3) words used circumstantially as indirect evidence (*e.g.* words of notification, as evidence that the person notified received knowledge). In all these three classes the utterances are offered, not as assertions to prove the truth of the fact asserted, but irrespective of their truth.

"Whenever, therefore, an utterance is used as testimony that the fact asserted in it did occur as asserted, *i.e.* on the credit of the speaker as a credible person, it is being used testimonially, and is within the prohibition of the Hearsay rule."

3. Now covered by Courts Art. § 9-116, which reads as follows: "A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement." The Revisor's Note reads as follows: "This section is new language derived from a part of Article 35, § 3. It is known as the 'dead man's statute' and is construed by the Court of Appeals very many times. While modernizing the language and simplifying the sentence structure for clarification purposes, every effort is made to retain the exact purpose of the statute as it is construed and as it is presently written." This statute became effective January 1, 1974.

damages recovered in the malpractice suit. This case is dispositive of appellee's argument that the widow and adult son are incompetent to testify in the instant case.

It should be noted that since the adoption of Md. Rule Q41, suits under causes of action arising within this state must now be filed in the name of the real parties in interest, rather than in the name of the State. We cannot conceive that when this rule was adopted, it was the intention of the Court of Appeals to make a change in the law of evidence and to exclude the testimony of parties in interest in a suit which is otherwise identical to that before the Court in *State v. Brainin, supra.* In that case the Court held the statute was designed to preclude testimony of a party to a cause which would tend to increase or diminish the estate of a decedent or to benefit the beneficiaries of suits brought by the distributees of the decedent as such. *Id.* at 165. We could, of course, review the many foreign cases on the question. *See* 3 Jones, *Evidence* § 20:24, at 640 (6th ed. 1972) and 77 A.L.R.2d 676, 700-702 (1961). We consider that such a discussion would be fruitless because (1) the statutes in the various jurisdictions differ, and (2) *State v. Brainin, supra,* is a recent case binding on this Court. In our holding we are also mindful 'that the Court of Appeals, as recently as *Schifanelli v. Wallace,* 271 Md. 177, 315 A. 2d 513 (1973), held that the statute must be construed most narrowly.

We are reversing the case because the trial judge excluded the testimony of the son who was not a party to the suit and, thus, we do not reach the interesting question of whether or not the testimony of the widow should have been excluded because, in addition to the Lord Campbell's Act suit, she was also suing under the survival statute, as administratrix to recover damages for decedent's pain and suffering.[4] This question will not arise on retrial because only the Lord Campbell's Act suit will be before the court. Her testimony should, therefore, be admitted in the new trial.

---

4. For differing points of view on this question, *see* 97 C.J.S. *Witnesses* § 214 e (1957) and 58 Am. Jur. *Witnesses* § 286 (1948).

The appellee makes only perfunctory argument that the law with reference to the admission of complaints is not as set out above, but rather, he argues that the error was harmless. We do not see it that way. There was no testimony before the jury relating to any complaints the appellant had made concerning his legs during this nineteen day period between the date of his injury and the date of his death, excluding the inconclusive testimony of an eye-witness to the automobile accident that the deceased had difficulty in getting his legs out of the car after the accident. All of the medical testimony indicated the embolism causing death most likely originated in the legs and that there must have been some inflammation in the legs in order to cause the blood clots which resulted in death. We do not regard this testimony that the clots could have formed in the legs without pain as important. It is obvious that evidence of pain in the legs during the crucial 19 day period might well have convinced the jury to accept the opinion of Dr. William Brownlee, that the death probably resulted from the automobile accident.

Dr. Thaddeus G. Fibich, a general practitioner in the District of Columbia, testified that he had examined the deceased on October 16, 1970, for the purpose of renewal of his taxicab driver's license and that at that time the deceased was in good health but that he had renewed a prescription for medication for an over-weight problem.

Dr. William Brownlee testified that he was a Deputy Medical Examiner for the District of Columbia; he performed an autopsy on the decedent on November 19, at approximately 1 p.m., and determined that the cause of death was multiple pulmonary embolization. The lungs were noted to be severely congested from multiple pulmonary emboli. He stated that the emboli originate from blood clots which form some place in the vascular system and migrate to the lungs. Most frequently in a pulmonary embolism, the clots would form in the veins of the legs, emboli would break off from the clots and migrate through the blood stream, through the two chambers of the heart and into the lungs. He stated he was not able to determine the source of the

emboli in this particular case but, most likely, the formation of the emboli was secondary to trauma, and the emboli discovered were consistent with trauma on October 30, 1970, the date of the accident. He testified that, on post-mortem examination, clots were not found in the veins of the legs, but that this did not rule out the probability that they could have formed there while the patient was alive. He testified that, in forming his opinion that death was the result of the accident, he had considered the deposition of Ellen Robinson, the plaintiff. We note that in the deposition she stated that the deceased had complained about his legs, however, no such testimony came before the jury. He concluded that it was not necessary to have injury to the particular leg area to precipitate the emboli found within the decedent's lungs.

Dr. Richard Sullivan testified on behalf of the defense that 95% of the pulmonary emboli result from a thrombus located in the veins of the leg. The remaining 5% form in the heart, pelvic and other vessels. The most common cause of embolus from a blood clot is from an inflammation reaction in the veins of the leg, which does not have to manifest pain, swelling or tenderness in the legs; a thrombophlebitis condition without pain, swelling or tenderness is known as a silent condition. He stated that, in his opinion, only contusion type trauma assists in the development of emboli, but there was no record in this case of a contusion type injury. In his opinion, death could not have been caused by the accident or by a thrombus resulting from the accident on October 30.

Dr. Bernard J. Walsh also testified on behalf of the defendant and stated that statistically the emboli which caused the decedent's death probably arose in his legs; that they probably developed a few days prior to his death, the autopsy having revealed no evidence of thrombi in the large veins of the legs from which emboli could have broken off; and further that there was no history of any injury to the legs. He stated that even if there were such history, there was no evidence of any scars on the lungs, which condition would have occurred if thrombus had developed from the accident on October 30, 1970.

In view of the thrust of the medical testimony, we cannot say that the erroneous exclusion of testimony pertaining to the deceased's complaints of pain in his legs, was harmless.

The appellee also argues the testimony was proffered "not to prove the truth of the assertions." This ignores that part of the proffer which stated that it was offered to prove the condition of his body. In any event, it is apparent that the trial judge first ruled that the testimony was not admissible because it was hearsay and on reconsideration ruled that it was not admissible under Md. Code, Art. 35, § 3, the "Dead Man's Statute."

Finally, appellant contends the trial court committed error in permitting the appellee to offer a portion of the appellant's deposition without offering all of it. The trial judge correctly ruled that it was not necessary for all of the deposition to be offered into evidence. At one point, the appellant sought to introduce only a small portion of the evidence of the deposition which further explained the part read by the appellee. We think that portion should have been admitted under Md. Rule 413 a 4. If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which, in fairness, ought to be considered with the portion originally introduced and any party may introduce any other portions in accordance with this rule.

> *Judgment reversed.*
> *Costs to abide result of a new trial.*