995 A.2d 744

Steven L. WILLIAMS, et al.

v.

William C. WORK, et al.

Steven L. Williams, et al.

v.

Ace American Insurance Company, et al.

Nos. 1652, 1653 Sept.Term, 2006.

Court of Special Appeals of Maryland.

May 26, 2010.

**440**

Brian Bennett (Terziu & Bennett, on brief), Baltimore, MD, for Appellants.

Robert Taylor, Jr. (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellees.

Panel: DAVIS, DEBORAH S. EYLER, and JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

KENNEY, Judge.

These consolidated appeals involve a single decedent and two suits with different plaintiffs, multiple defendants, and both wrongful death and under-insured motorist claims. Their resolution has led us into the "largely unmapped swamp"[1] of use plaintiffs in wrongful death actions and the appropriate protection of statutory beneficiaries in court-approved settlements that do not make provisions for all known beneficiaries.

Steven Williams, a minor, through his mother and next friend Donna Schrack ("Donna"), and Michael C. Williams (referred to as "Steven" and "Michael"), appellants and cross-appellees, appeal the denial by the Circuit Court for Baltimore County of their motion to reopen the judgment entered in *Lori Williams v. Ace American Ins. Co.*, No. 03–C–03–005338 (Cir. Ct. Baltimore County, May 17, 2005), No. 01652 (Sept. 2006) in this Court ("*Williams I*"), and to consolidate that action with their later filed action, *Steven L. Williams, et al. v. Work, et al.*, No. 03–C–05–007925 (Cir. Ct. Baltimore County Sept. 27, 2006), No. 01653 (Sept. 2006) in this Court ("*Williams II*"). *Williams I* was an action involving the death of Michael Dwayne Williams ("the decedent"), in which the court approved a settlement that made no financial provision for Steven or Michael, two sons of the decedent. *Williams II* was also an action for the death of the decedent. Steven and

---

1. Robert R. Michael, *The "USE" Plaintiff in Maryland Wrongful Death Cases: Some Ethical Observations,* Trial Reporter, Fall 2008, at 9. We commend this article to all counsel in cases involving use plaintiffs.

Michael appeal the circuit court's grant of summary judgment in favor of the alleged tortfeasors and their insurance providers in *Williams II*.

In *Williams II*, Ace American Insurance Co. ("Ace") has filed a cross-appeal of the circuit court's denial of its motion for attorney's fees and costs.

We have consolidated and rephrased the questions presented.[2]

Steven and Michael ask:

I. Did the circuit court err by denying their motion to reopen the judgment in *Williams I* and consolidate the wrongful death claims of all the primary beneficiaries?

II. Did the circuit court err in granting summary judgment in favor of all defendants in *Williams II?*

Ace asks:

Did the circuit court err in finding that *Williams II* was not brought in bad faith or without substantial justification and,

---

**2.** Steven and Michael ask:
 I. Whether the Circuit Court for Baltimore County committed reversible error by not reopening and consolidating the wrongful death claims of all the primary beneficiaries?
 II. Whether the Circuit Court for Baltimore County committed reversible error by granting appellees summary judgment?
Ace rephrases the questions as follows:
 1. Whether dismissal of the appeal filed in [*Williams I*] based upon the denial of the motions to reopen and consolidate and alter or amend judgment is required because the appeal was filed more than a year after entry of the final enrolled judgment, because Donna Schrack and Steven and Michael Williams lack standing and/or the capacity to file the appeal, and because they do not wish to disturb the settlement in the Williams case upon which the final judgment is based?
 2. Whether the lower court in [*Williams II*] properly granted [Ace] summary judgment in light of the fact that Maryland law absolutely provides for only one wrongful death action?
 3. Whether the lower court in [*Williams II*], the second wrongful death action, erred in denying [Ace]'s request for it's attorney's fees and other legal expenses incurred in that case because it was brought in bad faith and without substantial justification since Maryland law absolutely prohibits the filing of more than one wrongful death action?

for that reason, denying Ace's request for attorneys' fees and other legal expenses related to defending *Williams II?*

For the following reasons, we shall vacate the proposed settlement and the judgment based on that settlement in *Williams I*; reverse the circuit court's grant of summary judgment to all defendants and affirm the denial of attorney's fees to Ace in *Williams II*; and remand both cases to the circuit court for further proceedings consistent with this Opinion.

## *FACTUAL AND PROCEDURAL BACKGROUND*

On September 12, 2002, the decedent, an employee of Fireguard Corporation ("Fireguard"), stopped his work vehicle on the shoulder of I–95 in Howard County, Maryland, and flagged down Charles Beatty, III ("Beatty"), whom he knew from prior employment. Beatty was operating a truck provided to him by his employer, American Automatic Sprinkler Systems, Inc. ("American Sprinkler").[3] Beatty stopped his vehicle on the shoulder of the highway behind the vehicle driven by the decedent. After the decedent exited his vehicle to speak with Beatty, another driver on the highway, William C. Work ("Work"), lost control of his vehicle and struck the decedent. The decedent died before emergency personnel reached the scene.

At the time of the accident, State Farm Mutual Automobile Insurance Company ("State Farm") insured Work; Ace insured Fireguard; and State Auto Property and Casualty Insurance Company ("State Auto") insured American Sprinkler.

The decedent was survived by his wife, Lori Williams ("Lori"), and their children, Shane (three years old at the time of his death) and Jeremy (ten months old at the time of his

---

**3.** Steven and Michael assert that the truck operated by Beatty was leased to American Sprinkler by Ray Lee Leasing, Inc. ("Ray Leasing") and that Zurich insured the vehicle through an insurance policy with Ray Leasing. Zurich disputes this contention.

death). He was also survived by his children by a previous marriage to Donna: Michael (sixteen years old at the time of his death) and Steven (nine years old at the time of his death).

After State Farm, on behalf of Work, offered the policy limit of $100,000, Lori, individually, as the personal representative of the decedent and on behalf of Shane and Jeremy, brought *Williams I*,[4] seeking payment of under-insured motorist benefits from Ace.[5] Steven and Michael were not named as plaintiffs or as use plaintiffs. Ace, in turn, filed a third-party complaint against Work for subrogation and in-

---

**4.** Lori "individually and as Personal Representative of the Estate of Michael Williams" filed the Complaint and Prayer for Jury Trial on May 14, 2003, suing Ace for expenses related to the decedent's pain and suffering, loss of life, and burial costs. On July 22, 2003, Lori filed an Amended Complaint where she brought, in her capacity as personal representative, a survival action against Ace for uninsured/underinsured motorist benefits and, individually and on behalf of her children, a separate wrongful death claim.

**5.** We note that the circuit court and the defendants in both *Williams I* and *Williams II* have treated *Williams I* as a wrongful death action or, at least, as the one action to be brought, although both cases involve underinsured motorist claims. As a practical matter, any contract liability will involve substantive tort law and depend on the negligence of a third party. *See Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636 (2007), and *Holt v. Grange Mut. Cas. Co.*, 79 Ohio St.3d 401, 683 N.E.2d 1080, n. 3 (1997) ("settlement proceeds are distributable among those persons who are entitled to 'benefit from' a wrongful death action"). Notwithstanding the underinsured motorist claims, Zurich suggests that *Williams I* should be the "one action" for the death of Mr. Williams because the purpose of the wrongful death statute was

> to afford the tort feasor some repose from numerous lawsuits arising out of the death [which] would be defeated if these actions were allowed, as each defendant would have the right to hale the tort feasor into court anon. In this second action, the Schrack action, each of the defendants, as allegedly liable to the plaintiffs in contract, have the right to seek indemnnity [sic] against the original tort feasor; thus, despite his apparent earlier settlement, he remains answerable in tort, and at risk for a multitude of claims arising out of this incident, despite the mandate of the wrongful death statute.

The application of the Wrongful Death Statute and Rule 15–1001 to an underinsured motorist contract claim was not raised or addressed in the circuit court and is not addressed in this Opinion. *See Walker v. Essex*, 318 Md. 516, 523, 569 A.2d 645 (1990); Rules Committee, minutes, p. 12 (September 9–10, 1988).

demnification. The court granted Work's motion to strike the third-party complaint.[6]

Arguing that the decedent was not covered under the Omnibus Clause of the Ace insurance policy and that there was no evidence of "pre-impact fright" or "post-impact pain and suffering" to support recovery in a survival action, Ace moved for summary judgment. Lori opposed that motion and moved for partial summary judgment on the issues of Work's liability and the decedent's contributory negligence. The court granted summary judgment in favor of Lori on the issues of coverage under Ace's uninsured motorist policy for pre-impact fright and post-impact pain and suffering should either be awarded.

Thereafter, the parties in *Williams I* entered into settlement discussions. The parties were aware that Steven and Michael were the decedent's children, and, because the underlying liability of its insured involved the wrongful death of the decedent, in addition to a survival action, Ace, represented by Edward J. Lopata, insisted that all of the primary beneficiaries be joined in the action as required by the Maryland Wrongful Death Act. *See* Maryland Code (1974, 2006 Repl. Vol.) § 3–904 of the Courts and Judicial Proceedings Article ("Cts. & Jud. Proc.").

Brian Bennett, counsel for Lori, Shane, and Jeremy, drafted a Second Amended Complaint naming Steven and Michael as "use plaintiffs." That complaint was mailed to Steven and Michael, and, on April 11, 2005, it was served on Schrack. There is, however, no evidence that the Second Amended Complaint was actually filed with the court. The record does not include a Second Amended Complaint. There is no docket

---

**6.** Pursuant to Maryland Code Annotated (1995, 2003 Repl.Vol.), § 19–511(e)(2) of the Insurance Article ("Ins."), when Ace did not accept or reject State Farm's tender of the $100,000 policy limits within the statutory time frame, Lori accepted State Farm's settlement offer, released Work from further liability, and released State Farm from any subrogation claims. The approval of the State Farm settlement and distribution of the settlement proceeds, along with a proposed settlement from Ace, was submitted to the circuit court in *Williams I.*

entry of its filing, and Steven and Michael are not listed as "use plaintiffs" or parties of any sort in the docket entries. Ace filed an answer to the Second Amended Complaint on April 15, 2005, which is included in the record, but there is no docket entry for that, either.

On May 19, 2005, the parties to *Williams I* (Lori and her children as plaintiffs and Ace as the defendant) filed a Joint Motion for Approval of Settlement and Entry of Judgment. Relevant to this appeal, the Settlement Agreement included the following language:

9. The parties are in agreement that the Estate of Michael Williams does not have a viable claim given that he suffered an instantaneous death and had no conscious pain and suffering. In addition, all funeral expenses have been reimbursed from a related workmen's compensation claim and that, as a result, the Estate of Michael Williams, has effectively no viable and compensable claim.

10. The parties are also aware that a tortfeasor, William Work, tendered his policy limits of $100,000. The total recovery for the death of Mr. Michael Williams is, therefore, $850,000, with Defendant's, [Ace], settlement of $750,000 and Defendant's, William Work, previous settlement and payment of $100,000 to [Lori], individually and as mother and next friend of Jeremy Williams and Shane Williams, minors.

* * *

13. A Confidential Release and Settlement Agreement has been prepared by [Ace's] counsel. The parties wish to enter into such an agreement, and request prior court approval because of the requirements of Courts and Judicial Proceedings Article, Section 3–904(c), regarding the proportionment of funds to potential "beneficiaries[,]" *i.e.* Claimants and/or "Use" Plaintiffs, and of the instructions of *Walker vs. Essex,* 318 Md. 516, 569 A.2d 645 (1990), requiring the joinder of all potential beneficiaries to this single wrongful death action and their mutual consent to settlement or this court's approval of the settlement. *In this case, all Plaintiffs,*

*including "Use" Plaintiffs, Michael Williams and Steven Williams, have been formally notified of the pendency of this action, both by certified mail and by personal service of process; more than 30 days elapsed since the service of that process; and the "Use" Plaintiffs have not sought or done any act to join this action. [Lori], individually and on behalf of her minor children, Jeremy Williams and Shane Williams, along with [Ace], seek to foreclose the possibility that the "Use" Plaintiffs, Michael Williams and Steven Williams, shall make future claims against either Defendant, [Ace] or William Work, or Plaintiffs, Lori Williams, Jeremy Williams, Shane Williams and/or the Estate of Michael Williams.*

(Emphasis added.) This language in the Settlement Agreement identified Steven and Michael as "use plaintiffs" in the action, but, again, nothing in the record documents that any complaint designating them as plaintiffs (of any kind) was ever filed.

The Joint Motion stated that, of the "total recovery" of $850,000 "for the death" of the decedent, $283,333, in addition to $4,000 in costs, was to be paid to Bennett as counsel for Lori, Shane, and Jeremy. The remainder would be divided as follows: 50% ($281,000) to Lori; and 25% ($140,500) each to Jeremy and Shane, by way of a structured settlement. No compensation was provided to Michael or Steven, the ostensible use plaintiffs, and, according to the Settlement Agreement, the parties intended "to foreclose the possibility" that Steven and Michael would bring any future claims against any of the parties.

The court approved the settlement and entered judgment on May 19, 2005. The judgment is expressly in favor of Lori, Jeremy, and Shane, against Ace, and makes no reference to Steven or Michael. The last paragraph states that, upon payment of open costs, "any and all claims stemming from the death of [the decedent], as a result of a motor tort ... on September 12, 2002, shall be and hereby will be deemed 'SATISFIED IN FULL.'" The docket entries for *Williams I* reflect that copies of the judgment were mailed to the parties

pursuant to Rule 1–324.[7] Steven and Michael were not named on the record as plaintiffs or use plaintiffs, and they were not mailed a copy of the judgment. Lori filed a Line of Satisfaction of Judgment on June 16, 2005, requesting the Clerk of the Court to enter the judgment "against Defendant Ace American Insurance Company as 'paid and satisfied.'"

Five weeks later, on July 21, 2005, Bennett, now representing Steven, through Donna, as his next friend, and Michael, filed suit against Work, State Auto, and Zurich, seeking damages for the wrongful death of their father (*Williams II*). On August 15, 2005, an amended complaint was filed, adding Ace, Beatty, and American Sprinkler as defendants. Ace responded with a third-party complaint against Lori, who filed a motion for summary judgment.

Almost a year went by. On June 30, 2006, Bennett, on behalf of Steven and Michael, filed a motion in *Williams I* to reopen that case and to consolidate it with *Williams II*. They asserted that, as primary wrongful death beneficiaries, who did not receive any compensation and who had not consented to the settlement in *Williams I*, they are entitled to recover for the wrongful death of their father. Ace filed an opposition, as did American Sprinkler and Beatty.

On August 3, 2006, the court, without a hearing, denied the motion to reopen and consolidate. The order was docketed on August 8, 2006. On August 15, 2006, Steven and Michael filed a Motion to Alter or Amend, which the court denied, without a hearing, on September 9, 2006. On September 27, 2006,

---

7. Rule 1–324, Notice of orders, provides:

Upon entry on the docket of any order or ruling of the court not made in the course of a hearing or trial, the clerk shall send a copy of the order or ruling to all parties entitled to service under Rule 1–321, unless the record discloses that such service has already been made. This Rule does not apply to show cause orders and does not abrogate the requirement for notice of a summary judgment set forth in Rule 2–501(f).

Rule 1–321(a) provides, in pertinent part: "Except as otherwise provided in these rules or by order of court, every pleading and other paper filed after the original pleading shall be served upon each of the parties."

Bennett filed a notice of appeal for Steven and Michael and in *Williams I.*

In the meantime, in *Williams II,* discovery had been undertaken, including depositions of Donna and Michael. Each testified that, upon receiving the ostensible Second Amended Complaint in *Williams I,* they contacted Bennett's office but were told that, because he represented Lori, he could not speak to them about the case.[8] Eventually, they became aware that money had been paid to Lori, Shane, and Jeremy for the decedent's death. They did not want to disturb that payment but they too wanted to recover (Donna for Steven and Michael for himself) for the death. They made plain that they never consented to a settlement in which they would receive nothing.

Ultimately, in *Williams II,* Ace, American Sprinkler, Beatty and Zurich filed motions for summary judgment. They argued that there can be only one cause of action for a wrongful death and, because Steven and Michael were aware of *Williams I* but did not act on their claims, their opportunity to recover for the wrongful death of their father was foreclosed. Ace also sought attorney's fees under Rule 1–341, arguing that *Williams II* was commenced in bad faith or without substantial justification.[9] Steven and Michael opposed all of the

---

**8.** Contrary to this position, the Rules Committee, in regard to Rule 15–1001, provided: "The rule contemplates that before the action is filed the plaintiff contacts all those who could be entitled to recovery to discover if they wish to join the action." Rules Committee, minutes, p. 11 (September 9–10, 1988).

**9.** More specifically, Ace argued that *Williams II* was barred by "accord and satisfaction, payment, release, *res judicata,* and by a paid and satisfied judgment in [*Williams I,*]" and that "Steven and Michael cannot bring their claims separately" because "the statute specifically states that there can only be one (1) action for the wrongful death of a person[.]" It claimed that the release signed by Lori, "released 'all claims of every kind ... arising out of the incident of September 12, 2002, and the insurance policy issued by [Ace] to [Fireguard],'" and that:

Based on the specific language of Maryland's Wrongful Death Statute ..., Maryland's Rule 15–1001, and the pleadings prepared and filed by [Lori's counsel] in his earlier lawsuit, [Lori's counsel] knew that

motions for summary judgment. After a hearing, the court granted summary judgment to each defendant but denied Ace's motion for attorney's fees. Steven and Michael, still represented by Bennett, noted this appeal in *Williams II*.

## *WILLIAMS I*

### DISCUSSION

We begin with Ace's contention that "the appeal by Steven and Michael [ ] of the denial of the motions to reopen and consolidate and to alter or amend the final judgment filed in [*Williams I*] must be dismissed." Ace argues: "These motions necessarily involve the May 19, 2005, final enrolled judgment entered in [*Williams I*] because it is only through disturbance of this judgment that [*Williams I*] could be "reopened" so that [*Williams II*] could somehow be litigated." According to Ace, Steven and Michael's appeal in *Williams I* is "simply impermissible under Maryland Rule 8–202(a) [which] requires that a 'notice of appeal shall be filed within 30 days after entry and enrollment of judgment or order from which the appeal is taken.' "

Steven and Michael argue that the circuit court should have reopened *Williams I* under its revisory power and Rule 2–535(b). They characterize the settlement in *Williams I* as "a type of extrinsic fraud upon the ability of [Steven and Michael] to litigate their otherwise viable wrongful death claim." [10]

According to Ace, "[t]hese allegations were not made in either the motion to reopen and consolidate or the motion to alter or amend judgment." We agree that Rule 2–535 was not expressly invoked, but, at the time that the Motion to Reopen

---

any claims that the two "use" plaintiffs may have had were extinguished by the earlier Court-approved judgment, the payment and satisfaction of that judgment, and the executed release.

**10.** Rule 2–535(b) provides:

*Fraud, mistake, irregularity.* On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

and Consolidate was before the circuit court, counsel for both Lori and Ace apparently assumed that the Second Amended Complaint had been filed and that Steven and Michael had been designated as "use plaintiffs." [11] The Motion to Reopen and Consolidate referred to *Walker*, 318 Md. at 516, 569 A.2d 645, and the need for "the consent of 'primary' beneficiaries or court approval" of a settlement agreement. The arguments presented direct our focus to the effect of a complaint naming Steven and Michael as use plaintiffs that was either never filed or, if filed, was somehow lost or misfiled. In either case, the complaint was not included in the record and its filing was not entered on the docket. Nowhere are Steven and Michael identified on the record as use plaintiffs or as parties of any kind. Ace's answer to the Second Amended Complaint was included in the record, but there is no docket entry reflecting its filing. Had they been designated as use plaintiffs, Steven and Michael, presumably, would have been entitled to receive a copy of the judgment recorded on May 19, 2005, and that, in turn, would have provided them with an opportunity to file a timely motion to vacate that judgment under Rule 2–535(a).

Bennett, who, when he represented Lori, undertook to file the Second Amended Complaint and who represented to Ace and the settlement judge that it had been filed, now asserts on behalf of Steven and Michael that the Second Amended Complaint was not filed. On behalf of appellants, he contends: "[T]he failure to properly identify appellants as 'use plaintiffs' prohibits the court [from] having subject matter jurisdiction" to terminate, extinguish, or bar "appellants' claim under the [Wrongful Death] Act." [12] To be sure, whether Bennett failed

---

11. That the Second Amended Complaint had not been filed was not discovered until work on this appeal began.

12. Scant authority and analysis are provided to support this assertion. Cited is *Tandra S. v. Tyrone W.*, where the Court of Appeals explained that a " 'mistake' as used in Rule 2–535(b) is limited to a jurisdictional error, where the court has no power to enter the judgement[,]" but explains that "[t]he typical kind of mistake occurs when a judgment has been entered in the absence of valid service of process; hence, the court never obtains personal jurisdiction over a party." 336 Md. 303, 317,

to file the Second Amended Complaint or the Clerk's Office failed to properly process the pleading, Rule 15–1001(b) has not been satisfied because, "whether or not they join[ed] in the action," Steven and Michael were never "named as plaintiffs" in accordance with the Rule.

■ Whereas the earlier practice required that wrongful death actions be brought by the State on behalf of all statutory beneficiaries, wrongful death "suits under causes of action arising within [the] state must now be filed in the name of the real parties in interest, rather than in the name of the State." *Robinson v. Lewis*, 20 Md.App. 710, 714, 317 A.2d 854 (1974). As we see it, Rule 15–1001 is in the nature of a joinder rule or a condition precedent that requires that all known statutory beneficiaries, *i.e.*, the real parties in interest, be identified as parties to the litigation.

The Court of Appeals, in *Walker*, traced the current Wrongful Death Statute to the cause of action created for wrongful death by the English Parliament in "the Fatal Accidents Act of 1846, also known as 'Lord Campbell's Act.'" 318 Md. at 522, 569 A.2d 645 (citing 9 & 10 Vict. C. 93). The Court highlighted the difference between the English statute and Maryland's Wrongful Death Statute: "Under the English Statute the suit must be brought by the executor or administrator of the deceased for the use of the parties mentioned, while under our statute the suit is brought in the name of a person entitled to recover, and to the use of all such parties who may have an interest." *Id.* at 523, 569 A.2d 645.

---

648 A.2d 439 (1994) (citations omitted), *superseded by statute on other grounds, see e.g., Langston v. Riffe*, 359 Md. 396, 405, 754 A.2d 389 (2000).

Also cited is *Bernstein v. Kapneck*, 46 Md.App. 231, 417 A.2d 456 (1980), where this Court stated that "in those cases permitting a judgment to be set aside on the basis of 'mistake,' the mistake must necessarily be confined to those instances where there is a jurisdictional mistake involved." The Court, in *Bernstein*, cited two cases where a jurisdictional mistake had been found, each having to do with the absence of valid service of process. *Id.*

Then, turning its attention to § 3–904(b), which instructs that, "if a recovery or verdict is obtained in this one action, the amount recovered shall be 'divided among the beneficiaries in shares directed by the verdict,'" *id.* at 523, 569 A.2d 645, the *Walker* Court stated:

> The statutory language does not allow a judgment for one of the beneficiaries to be made a matter of record, as by its very nature, other claims are forever foreclosed or barred. The trial judge in this case considered the claims of the beneficiaries to be severable. The statute does not. A judgment should not have been entered in the circuit court unless it included the interests of all of the known beneficiaries.
>
> Additionally, the beneficiaries were children of tender years. Marcus was just six years of age. The circuit court, accordingly, should have been concerned all minor beneficiaries shared in the judgment and the available proceeds. The judge obviously would not want to foreclose the interest or claim of Marcus. The entry of judgment, however, had precisely this effect.

*Id.* at 524, 569 A.2d 645. The Court vacated the judgment and remanded the case. *Id.*

The United States District Court for the District of Maryland cited *Walker* in *Johnson v. Price,* 191 F.Supp.2d 626 (D.Md.2001). In that case, Meghan Price was driving her grandfather, Carl Johnson, when they were struck by Justin Steyer. Both Johnson and Price died as a result of the accident. Eloween Johnson, in her personal capacity and as personal representative for the estate of Carl Johnson, brought a survival action and a wrongful death action against Steyer and Karlyn Price, the personal representative of Meghan Price's estate, based on diversity jurisdiction. Steyer and Meghan Price were residents of Maryland. Eloween Johnson was a resident of West Virginia. *Id.* at 627.

Steyer moved to dismiss for lack of diversity jurisdiction. He contended that because Karlyn Price, a Maryland resident, was the daughter of Carl Johnson, she was required to be

named as a "use plaintiff" in the wrongful death action
brought by Eloween Johnson. As a "use plaintiff," Steyer
argued, Karlyn Price was a "real party in interest" and,
therefore, a plaintiff, for the purposes of determining diversity
jurisdiction. If Karlyn Price, a Maryland resident, was con-
sidered a plaintiff, the complete diversity necessary for diver-
sity jurisdiction was lost. *Id.* at 627–28.

Stating "[t]he well-established rule" that "a court assessing
diversity jurisdiction must consider only the citizenship of
those who are real and substantial parties in interest, disre-
garding the citizenship of merely nominal or formal parties,"
the court addressed the question of whether a party named as
a "use plaintiff" in a Maryland wrongful death action was a
"real party in interest." *Id.* at 628. In dismissing the case for
lack of diversity jurisdiction, the *Price* Court looked to "Mary-
land's wrongful death statute" as the "relevant substantive
law," *id.* at 629, stating:

An examination of the Maryland statute and related case
law reveals that Price has a real, legally cognizable interest
in this wrongful death case, and, further, that her rights to
wrongful death benefits for the death of her father must be
adjudicated as part of the wrongful death suit brought by
her mother. Maryland's wrongful death statute explicitly
permits only one wrongful death lawsuit to be brought by
the beneficiaries of a decedent. See Md.Code Ann., Cts. &
Jud. Proc. § 3–904(f); *see also Waddell v. Kirkpatrick,* 331
Md. 52, 626 A.2d 353, 359 (Md.1993); *Walker v. Essex,* 318
Md. 516, 569 A.2d 645, 647 (Md.1990). In that single action,
the beneficiaries of the decedent—including the decedent's
spouse, parents, and children, who are considered "primary
beneficiaries"—share any damages that are awarded in
proportion to the injuries they suffered as a result of the
decedent's death. Md.Code Ann., Cts. & Jud. Proc. §§ 3–
904(a), (c), (e).

Maryland law thus makes clear that all beneficiaries in
wrongful death lawsuits are the real parties in interest in
these suits. *See, e.g., Robinson v. Lewis,* 20 Md.App. 710,
317 A.2d 854, 857 (1974) (explaining that wrongful death

actions "must ... be filed in the name of the real parties in interest"). Indeed, if one of a decedent's beneficiaries is absent from a wrongful death lawsuit, Maryland law requires that a judgment rendered in favor of the beneficiary or beneficiaries who did prosecute the suit be vacated. *See Walker,* 569 A.2d at 648–49. Therefore, even though Price is refusing to seek wrongful death damages as a result of her father's death, Mrs. Johnson's wrongful death suit will adjudicate Price's rights, extinguishing her claim as to Defendant Steyer. By definition, then, she is one of the real parties in interest on the plaintiff's side of this action under Fed.R.Civ.P. 17(a). *Cf. United States v. Verrier,* 179 F.Supp. 336, 341 (D.Maine 1959) (finding "use plaintiff" who had enforceable right under state law to be a real party in interest under Rule 17(a)).

Although Rule 15–1001(b) does not require the statutory beneficiaries to formally join the litigation, "all persons who are or may be entitled by law to damages by reason of the wrongful death shall be named as *plaintiffs.*" The words "to the use of" simply identify plaintiffs who have not formally joined the action, but, as real parties in interest, they are plaintiffs whose interests must be acknowledged and protected throughout the litigation. *Robinson v. Lewis,* 20 Md.App. 710, 714, 317 A.2d 854 (1974) ("It should be noted that since the adoption of Md. Rule Q41, suits under causes of action arising within this state must now be filed in the name of the real parties in interest, rather than in the name of the State."); *and see Benjamin v. Union Carbide Corp.,* 162 Md.App. 173, 873 A.2d 463 (2005), *aff'd sub nom, Georgia–Pacific Corp. v. Benjamin,* 394 Md. 59, 904 A.2d 511 (2006).

 Although Rule 15–1001(b) does not require formal joinder, the failure to include a known statutory beneficiary as a plaintiff or a "use plaintiff" in a wrongful death action and to settle without providing for that beneficiary can be analogized to the failure to join a necessary party in an action where joinder is required. In our view, because of the one action rule, the failure to do so is a "defect" or "mistake" of jurisdic-

tional proportions in the proceeding, which may be raised at any time. *See S. Mgmt. Corp. v. Kevin Willes Constr. Co.*, 382 Md. 524, 550, 856 A.2d 626 (2004) ("Failure to join a necessary party constitutes a defect in the proceedings that cannot be waived by the parties, *and may be raised at any time, including for the first time on appeal.*"). That would be true whether the failure to name the statutory beneficiary as a plaintiff or use plaintiff is attributed to a failure to file or to a clerk's error in docketing a filed pleading. In a situation where no financial provisions were made for known beneficiaries, the former is in the nature of a jurisdictional mistake and the latter is an irregularity of process or procedure. Either would permit, and, in the circumstances of this case, require, opening the judgment to protect the interests of those beneficiaries.

■ Here, it appears that the parties did undertake compliance with Rule 15–1001. A copy of the unfiled complaint was sent to the parties and, though not required by the Rule, it was "served" on Donna. But, even if we treated Rule 15–1001 as having been substantially complied with, the result would again be the same. Rather than looking to Rule 2–535(b), we would, instead, conclude that the judgment of May 19, 2005, was not a final judgment under *Walker v. Essex,* 318 Md. 516, 569 A.2d 645 (1990). We explain.

As in this case, *Walker* involved a "settlement of a civil suit brought under the Wrongful Death Statute." *Id.* at 521, 569 A.2d 645. The decedent, Lupe Willardo Hawkins, Sr., was killed while riding as a passenger in a car owned by Joanne Lynette Dove and driven by Walter Essex. *Id.* Essex, who was alleged to be intoxicated, crashed into a Pepco utility pole. Hawkins left behind two infant sons, "Lupe Jr." and "Marcus," each by different mothers. *Id.* Lupe Jr.'s mother, as next friend of Lupe Jr., sued Hawkins and Dove. Dairyland Insurance Co. ("Dairyland"), at its request, was made a party to the action, as their insurer. *Id.* at 519, 569 A.2d 645.

During the settlement negotiations between Lupe Jr. and Dairyland, Dairyland's attorney stated by letter that "he

would be seeking court approval" for settlement in the full amount of the insurance coverage, $20,000. *Id.*

After the "settlement negotiations had been concluded," Dairyland learned of the existence of Marcus, "the potential second beneficiary," and "resisted settlement." When it did,

> Lupe Jr. filed a "Motion for Judgment," seeking to enforce the alleged settlement agreement by obtaining a judgment for the settlement amount. He then filed an amended complaint which, unlike the previous complaint, named Marcus as a potential beneficiary. At the same time, Marcus through his grandmother, Joan Walker, sought to intervene in the case. In an August 18, 1987 hearing, the judge granted Marcus' motion to intervene and Lupe Jr.'s motion for judgment. . . . .

*Id.* at 519–20, 569 A.2d 645.

Marcus then filed "his own complaint and a 'Motion to Alter or Amend the Judgment.'" *Id.* He appealed the denial of that motion, and the Court of Appeals granted *certiorari* prior to consideration of the case by this Court. *Id.*

Before addressing the "central dispute," the Court first "consider[ed] whether the entry of a judgment by the trial court, to the exclusion of a co-beneficiary, is a final appealable order under *Maryland Rules 2–602.*" *Id.* at 520, 569 A.2d 645. To determine the issue, the Court examined Cts. & Jud. Proc. § 3–904(f), which directs that "[o]nly one action under this subtitle lies in respect to the death of a person," and Cts. & Jud. Proc. § 3–904(c), which proscribes that "[t]he amount recovered shall be divided among the beneficiaries in shares directed by the verdict." *Id.* at 521, 569 A.2d 645.

Acknowledging that Marcus, the appellant in *Walker*, claimed that "he ha[d] been prejudiced, or effectively put out of court, upon entry of judgment for the co-beneficiary, Lupe, Jr.," the Court cited *Doehring v. Wagner*, 311 Md. 272, 533 A.2d 1300 (1987), where Judge Eldridge, writing for the Court, stated:

> The trial court's rule was unqualified; nothing in the trial court's action suggested any contemplation that a further

**458**

order be issued or that anything more be done. The trial court's action put the plaintiffs out of court, denying them the means of further prosecuting the matter in the circuit court.

*Walker,* 318 Md. at 521, 569 A.2d 645.

Without further analysis, the *Walker* Court concluded:

[T]he order denying the Motion to Alter or Amend the Judgment, from which the appeal was taken, was not a final judgment when the notice of appeal was filed. The circuit court did not direct the entry of a final judgment pursuant to Rule 2–602(b). Accordingly, this Court will enter a final judgment on its own initiative under authority of Rule 8–602(e)(1), so that we may consider the important issue involved, and to preclude the claim of Marcus from being barred from further consideration. We treat the notice of appeal as if filed on the date of the entry of the judgment for Lupe, Jr., and proceed with the consideration of the appeal.

*Id.* at 521–22, 569 A.2d 645 (footnote omitted).

Had Steven and Michael been properly designated as plaintiffs or "use plaintiffs," a settlement between Lori, State Farm, and Ace that excluded them from sharing in the settlement proceeds would clearly prejudice them and, as explained, would not constitute a final judgment under *Walker.* Here, the denial of the Motion to Reopen and Consolidate effectively denied Steven and Michael "the means of further prosecuting" their claims in *Williams I. Id.* That would permit entry of a final judgment on our own initiative under Rule 8–602(e)(1),[13] as the Court of Appeals did in *Walker,* in

---

13. Rule 8–602(e) provides:

(1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was final but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, (C) enter a final judgment on its own initiative or (D) if a final judgment was entered by the lower court after the notice of

order to "consider the important issue[s] involved" and to preclude the claims of Steven and Michael "from being barred from further consideration" in *Williams I. Id.*

Ace further contends that the settlement in *Williams I* must be upheld because Steven and Michael "did not wish to disturb the settlement in [*Williams I*] upon which the final settlement was based." In their Motion to Reopen and Consolidate, Steven and Michael stated, in pertinent part:

7. Pursuant to *Walker v. Essex*, 318 Md. 516, 569 A.2d 645 (1990), a settlement by some of the "primary beneficiaries" to a wrongful death suit requires either the consent of all primary beneficiaries or court approval. Obviously, neither Steven Louis Williams, a minor, or Michael Christopher Williams, consented to the settlement in the case of [*Williams I*]. This court approved the settlement knowing explicitly that the claims of Steven Louis Williams, a minor, and Michael Christopher Williams were not addressed. [*Williams II*] was filed to specifically address those unprovided for and legitimate claims of Steven Louis Williams, a minor, and Michael Christopher Williams.

8. Plaintiffs, Steven Louis Williams and Michael Christopher Williams, are mindful that Maryland's Wrongful Death Statute, specifically Section 3–901 of the Courts Article, and Rule 15–1001(b) specifically require a single action to address the claims of all beneficiaries to a potential claim. This Motion to Reopen and to Consolidate is being filed to address that issue, but not to disturb the previous funds allocated to settle the claims of Plaintiffs, Lori Williams, Jeremy Williams, and Shane Williams.

9. Plaintiffs Steven Louis Williams, a minor, and Michael Christopher Williams do not believe that the interests of justice and due process were/are served if it is determined

---

appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment.

\* \* \*

(3) If the appellate court enters a final judgment on its own initiative, it shall treat the notice of appeal as if filed on the date of the entry of the judgment and proceed with the appeal.

460

that their claims were terminated by the Order dated May 17, 2005. The Plaintiffs would have consented to the settlement of the claims made by Plaintiffs, Lori Williams, Jeremy Williams and Shane Williams, exactly on the terms identified provided that their own claims would have remained open to adjudication.

Although Steven and Michael indicated that it was not their goal to "disturb the previous funds allocated to settle the claims of Plaintiffs, Lori Williams, Jeremy Williams, and Shane Williams," Ace overlooks the fact that Steven and Michael expressly stated that they "would have consented to the settlement of the claims made by Plaintiffs, Lori Williams, Jeremy Williams and Shane Williams, exactly on the terms identified *provided that their own claims would have remained open to adjudication.*" (Emphasis added).

Ace argues that notice to Steven and Michael of the suit itself was all that was required, and that Steven's and Michael's decision not to "join" the suit forecloses both their participation in the *Williams I* settlement and any subsequent action on their own behalf. This argument rests on the premise that Steven and Michael had been properly designated as use plaintiffs and that Rule 15–1001 is simply a "notice" rule. It is satisfied by giving use plaintiffs notice of the action. Under this theory, once the use plaintiffs are notified, the burden falls upon them to join or intervene in the wrongful death action to protect their interests in the proceedings.

To interpret the Rule as simply a notice rule disregards: (1) the representative nature of wrongful death actions; (2) the language of Rule 15–1001(b), requiring that "all persons who are or may be entitled by law to damages by reason of the wrongful death shall be named as plaintiffs whether or not they join in the action[;]" and (3) the provisions of Cts. & Jud. Proc. § 3–904(c) relating to the award of damages to the statutory "beneficiaries" "proportional to injury resulting from the wrongful death."

 In common law pleading, a "use plaintiff" is "[a] plaintiff for whom action is brought in another's name."

Black's Law Dictionary, 7th Ed., p. 1547. As explained above, Rule 15–1001(b) requires that all the statutory beneficiaries be made plaintiffs in a wrongful death action, whether or not they join. When they do not join in the action, they are identified as "use plaintiffs" and the action proceeds to their use or benefit. All known beneficiaries must be "plaintiffs" under the rule and the court is put on notice that any recovery is for the benefit of all plaintiffs, joined or otherwise, in accordance with their statutory interest, whether that interest is represented by an award of damages as the result of a trial, Cts. & Jud. Proc. § 3–904(c), or by a settlement, *Walker,* 318 Md. at 518, 569 A.2d 645.[14] Notice to the use plaintiffs is required, but the duty owed to them as plaintiffs extends beyond mere notice. That continuing duty is, in our view, made clear in *Walker,* 318 Md. at 524, 569 A.2d 645, where the Court explained that the claims of beneficiaries in such actions are not severable. As the Court stated: "A judgment should not have been entered in the circuit court unless it included the interests of all of the known beneficiaries." *Id.*

In reference to settlements in wrongful death cases, the *Walker* Court stated that "the Wrongful Death Statute, Cts. & Jud. Proc. Art., § 3–904, and the rules relating to it ... implicitly require mutual consent or court approval." *Id.* at 518, 569 A.2d 645. Ace contends that, in *Williams I,* "court approval" of the settlement satisfied *Walker.* This contention treats "mutual consent or court approval" as an "either or" proposition in the sense that they represent alternative approaches to effecting a settlement. We do not understand "mutual consent or court approval" to mean that the circuit court could approve a settlement denying benefits to Steven and Michael, without, at least, some demonstration that a good faith effort had been made to gain their fully informed and knowing consent. *See Stone v. CSX Transp., Inc.,* 10 F.Supp.2d 602, 605 (S.D.W.Va.1998) (interpreting *Walker* to

---

**14.** It follows that use plaintiffs would be entitled to copies of any pleadings required to be served on the parties to the litigation.

"permit settlement of wrongful death actions only if all the beneficiaries knowingly consent to a release").

■ Rather, we believe the language "or court approval" speaks to exceptional circumstances, such as, but not necessarily limited to, instances where the beneficiaries cannot be located or agreement as to appropriateness of settlement or the allocation of the settlement proceeds cannot be reached among the beneficiaries.[15] In other words, "court approval" becomes an option only when there has been some effort to achieve the knowing consent of all the known beneficiaries. Here, not only did counsel for Lori and her children purposefully avoid any contact with the use plaintiffs, neither party notified Steven and Michael of the terms of the settlement, much less actively sought Steven's and Michael's consent to the Settlement Agreement, which expressly provided:

> The Plaintiffs, Lori Williams, individually and on behalf of her minor children, Jeremy Williams and Shane Williams, seek to foreclose the possibility that the "use" plaintiffs, Michael Williams and Steven Williams, shall make future claims against Defendant, Ace American Insurance Company or William Work or Plaintiffs, Lori Williams, Jeremy Williams, Shane Williams, and the Estate of Michael Williams.

Although their respective motivations, and, perhaps, even their understandings of the effect of settlement, may have differed, the objective of Lori and Ace was to settle *Williams I* without providing for Steven and Michael, both minors at the time of their father's death and when *Williams I* was initiated,

---

15. *See Scamardella v. Illiano*, 126 Md.App. 76, 83, 727 A.2d 421 (1999), *cert. denied*, 354 Md. 115, 729 A.2d 406 (1999) (Multiple plaintiffs agreed to a settlement with defendants without designating the apportionment of the funds, and a party filed a motion asking the court to allocate the proceeds. The court held plenary hearings and then "allocated the settlement monies in a manner proportionate to the respective injuries sustained and in consideration of the law of damages applicable to the parties' claims.").

and to foreclose Steven and Michael from bringing claims against Work, Ace, Lori, or decedent's estate. Neither Lori nor Ace nor the circuit court had the authority to deny Steven and Michael a recovery for their father's death under the Wrongful Death Statute.[16]

On remand, the circuit court must vacate the judgment and the settlement approved in *Williams I* and grant the motion to consolidate the cases, keeping in mind that all statutory beneficiaries are to be either plaintiffs or use plaintiffs in the consolidated case.

---

**16.** Ace, relying on the one action rule, places responsibility for omitting Steven and Michael from the settlement on Lori, who, in turn, through counsel, indicated that she had no authority to represent Steven's and Michael's interests. From its view, Steven and Michael would now have a cause of action against Lori, rather than Work and Ace. We note that several courts have held that a defendant waives the benefits of the one action rule when it settles with less than all of the known statutory beneficiaries. The Supreme Court of Idaho, citing *Southeastern Greyhound Lines v. Wells*, 204 Ga. 814, 51 S.E.2d 569 (1949), has held that a defendant who settled voluntarily with a statutory beneficiary while having knowledge that other statutory beneficiaries existed and that the settlement did not provide for them "waived the right to insist upon a single action joined by all" beneficiaries. *Hogan v. Hermann*, 101 Idaho 893, 897, 623 P.2d 900, 904 (1980).

In *Romero v. Pacific Gas and Electric Co.*, 156 Cal.App.4th 211, 215, 67 Cal.Rptr.3d 236 (2007), the Court of Appeal of California, Third Appellate District, held that "[a] tort feasor waives the protection of the one action rule by settling with less than all the known [beneficiaries] if such [beneficiaries] are not a party to the action," and a beneficiary not properly joined in the action is "not a party to the action." The *Romero* Court went on to state that the defendant could not rely on the fact that the beneficiary was "ostensibly joined in the action" because the "defendant has the burden and the means of determining whether [a beneficiary]" has been "properly joined." *Id.*; *See also Gonzales v. Southern California Edison Company*, 77 Cal.App.4th 485, 491, 91 Cal.Rptr.2d 530 (1999) ("There are numerous contexts in which a party is held to [his or] her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her. We see no reason why this should not be so with respect to wrongful death defendants that learn of the existence and identity of possible additional [beneficiaries] who are not parties, yet proceed to settle in short order with those who are parties." (Internal citations and quotations omitted.)); *Valdez v. Smith*, 166 Cal.App.3d 723, 212 Cal.Rptr. 638 (1985) ("Defendants[,] by voluntarily electing to settle with [some of the beneficiaries] with full knowledge of the existence, identity, and status

### *WILLIAMS II*

On September 27, 2006, the circuit court held a hearing on the motions for summary judgment by all defendants in *Williams II*. The circuit court granted summary judgment in favor of all defendants for the claims brought against them by Steven and Michael.

### *DISCUSSION*

We review an order granting summary judgment *"de novo."* *Serio v. Baltimore County*, 384 Md. 373, 388, 863 A.2d 952 (2004) (other citations omitted). Initially, we look to see "whether a dispute of material fact exists." *Id.* (citing Md. Rule 2–501(e) (2002) (other citations omitted). If so, "summary judgment is not appropriate." *Id.* (other citations omitted). A material fact is "a fact the resolution of which will somehow affect the outcome of the case." *Matthews v. Howell*, 359 Md. 152, 161, 753 A.2d 69 (2000)). "If no material facts are disputed, however, then we must determine whether the Circuit Court correctly granted summary judgment as a matter of law." *Serio*, 384 Md. at 389, 863 A.2d 952 (citing Md. Rule 2–501(e) (other citations omitted)).

In granting summary judgment, the circuit court, referring to *Williams I*, stated:

> [B]ased upon the Statute which allows for only the filing of one wrongful death claim and one having been filed and fully and finally litigated and settled, I find that the defendants are all entitled to summary judgment.

Because we are vacating the judgment in *Williams I*, the court's grants of summary judgment in *Williams II* were based on the mistaken belief that a wrongful death action had been finally adjudicated.

 Moreover, Beatty, American Sprinkler, and Zurich were not named as defendants in *Williams I*, and, therefore,

---

of [another beneficiary] ... thereby waived their right to insist upon a single action joined in by all the [beneficiaries].")

the grant of summary judgment in their favor based on the "one action" rule was error. As the Court of Appeals observed in *State use of Bashe v. Boyce*, 72 Md. 140, 143–144, 19 A. 366 (1890), "[the wrongful death statute] never contemplated depriving a plaintiff of the right to sue separately different joint tort-feasors, though, of course, there can be but one satisfaction, no matter how many judgments may be recovered." More recently, the *Walker* Court explained, "[T]he purpose of the one action rule is to protect *a defendant* from being vexed by several suits instituted by or on behalf of different equitable plaintiffs for the same injury, when all the parties could be joined in one proceeding." 318 Md. at 523, 569 A.2d 645. (Emphasis supplied).

Zurich argues that "there was an alternate basis" upon which to grant it summary judgment. It states:

> As an additional basis for the entry of judgment in its favor, Zurich filed a supplemental motion for summary judgment, to which was attached an uncontested, uncontroverted affidavit attesting that no policy of insurance had been issued by Zurich that provided benefits applicable to this incident.

Although we review a grant of summary judgment *de novo*, we ordinarily do not review the grant of summary judgment on a basis the circuit court did not either consider or decide on. *See de la Puente v. County Comm'rs*, 386 Md. 505, 510 n. 7, 873 A.2d 366 (2005) ("[I]n appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment.") *Lovelace v. Anderson*, 366 Md. 690, 695, 785 A.2d 726, 729 (2001) (quoting *PaineWebber v. East*, 363 Md. 408, 422, 768 A.2d 1029, 1036 (2001)).

Neither the court's ruling on September 27, 2006, nor the Order addressed Zurich's alternate basis for summary judgment. Zurich may, of course, pursue summary judgment on this basis on remand.

### *The Third Party Complaint*

Lori was not named as a defendant by Steven and Michael in *Williams II.* Ace filed a third party complaint against Lori, "individually and as Personal Representative of the Estate of Michael Williams and/or as Plaintiff in [*Williams I*] and/or as mother and next friend of the children of Michael Williams." Ace argued that Lori entered into the consent judgment "for the benefit of beneficiaries entitled to recover for the alleged wrongful death of Michael Williams and therefore was required to distribute the settlement proceeds according to Maryland's Wrongful Death Statute." According to Ace, "if Plaintiffs are entitled to any money from [it], said money must come from settlement funds paid to [Lori] due to her failure to protect the interests of the beneficiaries entitled to recover pursuant to Maryland's Wrongful Death Statute[.]" Ace sought indemnification and/or contribution for any sum of money it may have to pay to Steven and Michael in *Williams II.*

On September 11, 2006, Lori filed a motion for summary judgment against Ace, arguing that "the parties expressly agreed that the claims of Mr. Williams' other two children [were] not being settled and that neither [Lori] nor her attorney have the authority to do so," and that Ace was "advised that Lori Williams would not indemnify or hold Ace [ ] harmless from claims of any other individuals that may be brought at a later date."

In the September 27, 2006 Order, the court found that Lori's motion for summary judgment was moot, "in light of the entry of judgment in favor of the Defendants on the causes of action." Ace's third party complaint is based on Lori's alleged obligations under the settlement agreement. As we have determined that the settlement agreement is to be vacated, any basis for another third party complaint and the applicable defenses may be considered on remand.

### *Attorney's Fees*

Ace argues that the circuit court erred in finding that *Williams II* was not brought in bad faith or without substan-

tial justification and, for that reason, by denying Ace's request for attorneys' fees and other legal expenses related to defending *Williams II.*

Rule 1–341 provides that if a party maintains or defends a proceeding in bad faith or without substantial justification, the court may order the offending party or its attorney or both to pay for the costs of the proceeding, including reasonable attorneys fees.

In denying Ace's motion for attorney's fees in *Williams II,* the circuit court stated:

> For me to award fees requires a finding essentially of bad faith, that it was brought in bad faith as a frivolous action and that it lacks merit. But that it be a finding that would be done in bad faith [sic]. While, for the reasons stated, I don't think you can do what you did, I find the whole process of what you are supposed to do with use plaintiffs to be troublesome.
>
> What is clear to me is that [plaintiff's counsel], however much I disagree with where we ended up, I don't think he did it in bad faith, intended to file something that he knew to be frivolous. I think his position in this case as counsel for all of these people is problematic also. But I'm not find that it's in bad faith. And for those reasons I'm not awarding fees. . . . .

▆▆ "Where the trial judge has discretion to award attorneys [sic] fees, his or her exercise of that discretion will not be overturned unless clearly erroneous." *Armstrong v. Mayor of Baltimore,* 409 Md. 648, 687, 976 A.2d 349 (2009) (citing *Dent v. Simmons,* 61 Md.App. 122, 127, 485 A.2d 270 (1985)).

▆▆ We hold that the circuit court's decision was not clearly erroneous and that the circuit court did not abuse its discretion in denying Ace's motion for attorney's fees.

## CONCLUSION

In conclusion, we hold in *Williams I* that the proposed settlement agreement between Ace, Work, Lori, and her

children, and the judgment based on that settlement, must be vacated and remanded to the circuit court for further proceedings. In *Williams II*, we affirm the denial of attorney's fees to Ace but reverse the grants of summary judgment in favor of all defendants. We instruct the circuit court to consolidate *Williams I* and *Williams II* in any further proceedings. Our decision in this case is without prejudice to any claims of release and estoppel between and among the various parties in the litigation.

We feel the obligation to comment that these cases present what appear to us to be clear conflict issues for Bennett in his continued representation of parties to this litigation. In doing so, we recognize that we are not privy to the engagement and possible conflict disclosure agreements that might exist between Donna, Michael, and counsel in *Williams I*. Nor are we privy to any agreement that might exist between Lori and counsel related to *Williams I* and counsel's efforts to reopen *Williams I*. It would appear, however, that both Lori's settlement and Steven and Michael's potential recovery have been compromised by counsel's successive representations of Lori and her children in negotiating the settlement with Ace and then of Stephen and Michael in attempting to vacate the settlement.

**JUDGMENT IN *WILLIAMS I* VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. JUDGMENTS IN *WILLIAMS II* REVERSED AND ORDER DENYING ATTORNEY'S FEES TO ACE AFFIRMED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN *WILLIAMS I* TO BE PAID ½ BY LORI AND ½ BY ACE; COSTS IN *WILLIAMS II* TO BE PAID IN EQUAL SHARES BY ACE, WORK, STATE FARM, BEATTY, AMERICAN SPRINKLER, ZURICH, AND STATE AUTO.**